Debra S. JOBES, Appellant–Plaintiff,

v.

TOKHEIM CORPORATION and Robert Nichols, Appellees–Defendants.

No. 02A03–9504–CV–116.

Court of Appeals of Indiana.

Oct. 31, 1995.

Edward L. Murphy, Jr., Larry L. Barnard, Miller Carson Boxberger & Murphy, Fort Wayne, for appellant.

Robert Owen Vegeler, John W. Bowers, Beers, Mallers, Backs & Salin, Fort Wayne, for appellee.

## OPINION

STATON, Judge.

Debra Jobes brought a defamation and invasion of privacy action against her employer, Tokheim Corporation, and its personnel manager, Robert Nichols. Later, the trial court granted summary judgment to her employer and its personnel manager and she appeals.[1] Her appeal presents the following issues for our review:

I. Whether the evidence designated by Tokheim in support of its summary judgment motion was sufficient to meet the requirements of Ind.Trial Rule 56(C).

II. Whether summary judgment was appropriate because Jobes' claims are preempted by Section 301 of the Labor Management Relations Act.

We affirm.

The facts most favorable to Jobes reveal that on March 25, 1992, Jobes was injured on the job at Tokheim's factory in Fort Wayne, Indiana. While Jobes was being treated for her injury, Tokheim instructed her treating physician to test Jobes' blood for the presence of illegal drugs. Jobes tested positive for illegal drugs. On April 1, 1992, Tokheim

1. Hereafter, Tokheim Corp. and Robert Nichols will be referred to collectively as Tokheim.

terminated Jobes' employment. Thereafter, U.A.W. Local Union 159 ("the Union") filed a grievance on Jobes' behalf, challenging the drug testing procedure and alleging that she had not been discharged for just cause. The matter was submitted to binding arbitration pursuant to the required grievance procedure, after which the arbitrator ordered Jobes' reinstatement.

Jobes subsequently filed this action for defamation and invasion of privacy; she alleged in her complaint that Tokheim invaded her privacy and unreasonably published the results of her drug test. Tokheim filed a motion for summary judgment, arguing that Jobes' claims were preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). The trial court granted Tokheim's motion, and this appeal ensued.

█ Our standard of review is well settled. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

█ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny* (1994), Ind.App., 627 N.E.2d 1362, 1363, *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## I.

### *Designation of Evidence*

█ As our standard of review indicates, T.R. 56(C) requires a party moving for summary judgment to specifically designate to the court all materials on which it relies to support its motion. The purpose of this requirement is to substantially limit the scope of materials that trial and appellate courts must review in order to determine the propriety of summary judgment. *Dzvonar v. Interstate Glass Co., Inc.* (1994), Ind.App., 631 N.E.2d 516, 518, *trans. denied.* To that end, a party does not comply with T.R. 56(C) merely by designating entire portions of the record; specific citations to relevant evidence are required. *Id.* However, the form by which a party is to designate evidence is not mandated by the rule. *National Board of Examiners v. American Osteopathic Association* (1994), Ind.App., 645 N.E.2d 608, 615. As long as the trial court is advised of the specific material upon which the parties rely, then the material may be considered. *Id.*

Tokheim moved for summary judgment on the basis that Jobes' claims were preempted by federal law. In support of its argument, Tokheim designated, *inter alia*, the collective bargaining agreement between Tokheim and the Union and the affidavit of Robert Nichols, Tokheim's personnel director, which stated that Tokheim's management and personnel policies are governed by the collective bargaining agreement. Jobes argues that Tokheim failed to meet the designation requirement of T.R. 56(C) because Tokheim did not include in its supporting memorandum specific references to paragraphs and pages in these respective documents.

In support of this argument, Jobes relies on the facts in *Dzvonar, supra.* In *Dzvonar*, the movant "merely referred to the complaint, answer, and the affidavits ... without any specific citations as to where evidence supporting its assertions could be found in the mentioned materials." *Id.* The court concluded that the movant's "general references" did not constitute a sufficient designation under T.R. 56(C). *Id.*

█ We believe *Dzvonar* is distinguishable from the case at bar. Tokheim's memoran-

dum in support of summary judgment referred to the relevant portions of the collective bargaining agreement by specific article number, and quoted the relevant language verbatim. Although Tokheim's references to Nichols' affidavit did not contain paragraph references, it did refer to the substantive assertions relied upon. Moreover, the issue before the trial court was a pure issue of law, and the exhibits to which Tokheim failed to make specific references were not dispositive thereto.[2] The citations to the collective bargaining agreement and its various provisions sufficiently apprised the trial court of the basis of Tokheim's summary judgment motion. *National Board of Examiners, supra.* We find no error here.

## II.

### *Preemption*

The trial court granted Tokheim's summary judgment motion on the basis that Jobes' claims were preempted by Section 301 of the Labor Management Relations Act of 1947 ("Section 301"), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . .

29 U.S.C. § 185(a). This section not only confers jurisdiction over controversies involving collective bargaining agreements on the federal courts,[3] but also "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers of America v. Lincoln Mills* (1957), 353 U.S. 448, 451, 77 S.Ct. 912, 913, 1 L.Ed.2d 972. The application of state law is preempted if such application requires the interpretation of a collective bargaining agreement; that is, if its application is inextricably intertwined with consider-

ation of the terms of the collective bargaining agreement such that it cannot be considered independent thereof. *Allis–Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 212–213, 105 S.Ct. 1904, 1911–12, 85 L.Ed.2d 206. Once it is determined that a claim arises under Section 301, the aggrieved union member is bound by the grievance procedures of the collective bargaining agreement, unless the member also demonstrates that the union violated its duty of fair representation by failing to pursue the grievance on the member's behalf. *United Parcel Service v. Mitchell* (1981), 451 U.S. 56, 62, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732.[4]

The relationship between Section 301 preemption and claims of defamation and invasion of privacy under Indiana state law is an issue of first impression in this jurisdiction. Because this is an issue of federal law, we must look to the decisions of our federal courts for guidance. Most factually analogous is the decision of the Ninth Circuit Court of Appeals in *Schlacter–Jones v. General Telephone of California* (1991), 9th Cir., 936 F.2d 435.

In *Schlacter–Jones,* the employer ("GTE") unilaterally implemented a drug and alcohol testing policy. Some time later, GTE supervisors observed that Schlacter–Jones appeared under the influence of drugs or alcohol while on duty, and ordered her to submit to testing pursuant to the policy. *Id.* at 438. When tests revealed the presence of cocaine in Schlacter–Jones' system, GTE terminated her. *Id.* The union filed a grievance on Schlacter–Jones' behalf, contending that the drug testing policy was an unlawful change in the terms and conditions of employment. *Id.*

The arbitrator who heard Schlacter–Jones' grievance found that the drug testing policy was not a product of bilateral negotiations between GTE and the union, but that the evidence was insufficient to conclude that it

---

**2.** The facts relevant to the issue of federal preemption are largely undisputed. The only factual dispute apparent in the parties' designated materials appears to be Jobes' consent to the drug test. This disputed claim is not material to the legal issue before this court.

**3.** The United States Supreme Court subsequently determined that state courts have concurrent jur-

isdiction over Section 301 claims. *Dowd Box Co. v. Courtney* (1962), 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483. However, state courts are constrained to apply federal law. *Teamsters v. Lucas Flour Co.* (1962), 369 U.S. 95, 102, 82 S.Ct. 571, 576, 7 L.Ed.2d 593.

**4.** Jobes makes no claim that the Union breached its duty of fair representation.

was an illegal change in the collective bargaining agreement. The arbitrator determined that Schlacter–Jones was terminated for just cause. *Id.* Schlacter–Jones then filed a complaint alleging various state law violations. In concluding that summary judgment in favor of GTE was appropriate, the 9th Circuit Court of Appeals stated:

> The counts for constitutional violations, intentional infliction of emotional distress, and fraud and deceit rest on her charge that she was unreasonably subjected to humiliating and inaccurate drug tests, and that GTE breached oral promises to keep information about her drug test and personal problems confidential. Each of these claims hinges on the contention that GTE improperly required Schlacter–Jones to submit to a drug test. There is no dispute that the CBA governs the working conditions of Schlacter–Jones's employment. A drug and alcohol testing program is a working condition 'whether or not it is specifically discussed in the CBA.' *Laws v. Calmat* (1988), 9th Cir., 852 F.2d 430, 433. Only by examining the CBA can one decide whether the drug policy constitutes a working condition legitimately implemented under the agreement and whether the powers granted to management under the CBA contemplate the right to require 'reasonable cause' fitness for duty tests, including drug and alcohol screens. These are questions of labor contract interpretation that federal law governs. Schlacter–Jones's state law claims are thus 'inextricably intertwined' with an analysis of the CBA.

*Id.* at 440 (footnote omitted).

 We find this rationale persuasive. Like the plaintiff in *Schlacter–Jones,* Jobes' working conditions are governed by a collective bargaining agreement. Too, each of Jobes' claims hinges on her contention that Tokheim improperly required her to submit

to a drug test. Accordingly, we conclude that Jobes' state law claims are inextricably intertwined with an analysis of the collective bargaining agreement, and are thus preempted by Section 301.[5] *See also Utility Workers of America, Local No. 246 v. Southern California Edison Co.* (1988), 9th Cir., 852 F.2d 1083, 1087 (California state constitutional challenges to employer's drug testing program preempted by Section 301); *Strachan v. Union Oil Co.* (1985), 5th Cir., 768 F.2d 703, 704–705 (state tort law claims arising out of suspension and testing of employees whom the employer suspected of drug use and mental problems preempted by Section 301).

Jobes attempts to circumvent federal preemption based on the decision of the National Labor Relations Board in *Johnson–Bateman Co. and Machinists Local Lodge 1047* (1989), 131 L.R.R.M. (BNA) 1393, 1989 WL 224131. In *Johnson–Bateman,* the National Labor Relations Board determined that drug and alcohol testing is a mandatory subject of bargaining between employers and union representatives. *Id.* at 1396–1397. Accordingly, Jobes argues, Tokheim's unilateral implementation of a mandatory bargaining subject in this case brought it outside the collective bargaining agreement, rendering Section 301 inapplicable.

 Jobes' argument is without merit. While it is an unfair labor practice for an employer who is a party to a collective bargaining agreement to make unilateral changes in mandatory subjects of bargaining, *Johnson–Bateman, supra* (citing *NLRB v. Katz* (1962), 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230), Jobes cites no authority for the proposition that the commission of an unfair labor practice renders the collective bargaining agreement inapplicable to the dispute. In fact, the procedures and remedies available to unions alleging the commission of an unfair labor practice are expressly dictated

---

5. Jobes attempts to distinguish *Schlacter–Jones* based on the findings of the respective arbitrators. The arbitrator in *Schlacter–Jones* determined that the evidence was insufficient to establish that GTE's drug testing policy violated the collective bargaining agreement. In contrast, the arbitrator who heard Jobes' grievance made no determination as to the propriety of Tokheim's drug testing procedure. This distinction is inconsequential. The findings of the arbitrator did not dictate the result of the *Schlacter–Jones* court. Instead, the conclusion that preemption was warranted was based on the unavoidable relationship between Schlacter–Jones' claims and the applicable collective bargaining agreement. The same holds true for Jobes.

by federal labor law. *See e.g.*, 29 U.S.C. § 160.

Whether Jobes was improperly required to submit to a drug test is inextricably intertwined with management's control and regulation of the terms and conditions of her employment.[6] *Schlacter–Jones, supra.* Because Jobes' claims are inseparable from the parties' rights and obligations under the collective bargaining agreement, they are preempted by Section 301.

Affirmed.

HOFFMAN and FRIEDLANDER, JJ., concur.

---

6. Jobes argues that the application of federal preemption in this case creates a gap in legal protection and leaves her without a remedy. Although preemption has been regarded as creating an "arbitrary gap in legal protection" in some circumstances, *Brazinski v. Amoco Petroleum Additives Co.* (1993), 7th Cir., 6 F:3d 1176, 1179–1181, we do not believe this gap should change the result in this case. The parties could have filled the gap by including additional remedial measures in the collective bargaining agreement, but chose not to do so. Jobes, as a member of the Union, is a recipient of the benefits and protections provided in the agreement. She is equally bound by its limitations.