Benny B. GORDON, Appellant–Respondent,

v.

Janet A. GORDON, Appellee–Petitioner.

No. 43A03–0001–CV–25.

Court of Appeals of Indiana.

July 28, 2000.

James P. Fenton, Alan VerPlanck, Fort Wayne, Indiana, Attorneys for Appellant.

Jamelyn E. Freeman, Warsaw, Indiana, Attorney for Appellee.

## OPINION

HOFFMAN, Senior Judge

Appellant–Respondent Benny B. Gordon appeals from the trial court's grant of a protective order requested by Appellee–Petitioner Janet A. Gordon. We affirm.

Benny raises four issues for our review, which we restate as:

1. Whether the trial court had jurisdiction to issue a protective order.

2. Whether the allegations of the petition, and the evidence in support thereof, form a sufficient basis for issuance of the protective order.

3. Whether the terms of the protective order are impermissibly vague, ambiguous, and/or overbroad.

4. Whether the portion of the protective order restricting Benny from making any remarks in Janet's presence is too restrictive.

Benny and Janet both work at DePuy Corporation in Warsaw. Janet is married to Benny's brother. Janet filed a petition for a protective order against Benny alleging that "sexual harassment in the workplace has been going on for over five years." Janet indicated that she had requested assistance from DePuy in stopping the harassment, and as a result, Benny was suspended from work for two weeks. Further restrictions upon Benny were dissolved after he filed a grievance.

In her petition for a protective order, Janet alleged that the sexual harassment manifested itself when Benny followed her and subjected her to sexual, verbal, and mental abuse in the workplace. The petition further alleged various incidents of such abuse.

At the hearing on the petition, Janet testified that Benny's offensive behavior became more subtle after the suspension. Specifically, she testified that his behavior changed from definable acts of abuse to general intimidation.

The trial court granted Janet's petition for a permanent protective order. The order states in pertinent part that Benny must

> refrain from abusing, harassing or disturbing the peace of [Janet] by either direct or indirect contact at their mutual place of employment and that [Benny] shall not speak to or make bodily contact with [Janet] and shall make no remarks in her presence not compelled by the employment situation in which they mutually engage.

(R. 41).

Benny contends that the trial court lacked jurisdiction to issue the protective order. He argues that his troubles with Janet constitute a "labor dispute" as that term is defined in Ind.Code § 22–6–1–12 and that no Indiana trial court has jurisdiction over this type of dispute absent compliance with Ind.Code § 22–6–1–1 et seq. (the "Anti–Injunction Act").

■ When equitable relief is sought in the context of a controversy involving labor relations, the trial court must "initially inquire as to whether the Anti–Injunction Act has withdrawn the court's jurisdiction to grant the desired remedy." *International Union of Operating Engineers v. Beck*, 669 N.E.2d 441, 443 (Ind.Ct.App. 1996). The Anti–Injunction Act specifically provides that no Indiana court "shall have jurisdiction to issue any restraining order . . . in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter." Ind.Code § 22–6–1–1. A "labor

dispute" includes "any controversy concerning terms or conditions of employment...." Ind.Code § 22–6–1–12. It is well-settled that "[t]he most cursory reading of the [Anti–Injunction Act] is sufficient to convince one that it is predicated in its entirety upon the existence of a labor dispute and if none exists it has no application." *Local Union No. 135, Affiliated with International Brotherhood of Teamsters et al. v. Merchandise Warehouse Co.,* 127 Ind.App. 57, 132 N.E.2d 715, 717 (1956).

In interpreting the aforementioned statutory provisions, we must consider the statement of public policy contained in Ind. Code § 22–6–1–2. In pertinent part, this statute provides that a worker shall be entitled "to obtain acceptable terms and conditions of employment," and that such entitlement comes from his ability to obtain "full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor or their agents" in obtaining such self-organization.

■ We must agree with the trial court that Janet's claim pertains to a matter that, while occurring at the workplace, is personal in nature. The ability to sexually, verbally, and/or mentally abuse a co-worker is not an acceptable term or condition of employment. It therefore is not a "freedom" which is protected by the Anti–Injunction Act.[1]

■ Benny also contends that the trial court's jurisdiction in this case was pre-empted by federal labor law. Although Benny fails to identify any applicable federal statute, he does cite to *Jobes v. Tokheim Corp.,* 657 N.E.2d 145 (Ind.Ct.App. 1995) in support of his contention.

In *Jobes,* we held that the plaintiff's claims were pre-empted because they were governed by a collective bargaining agreement. 657 N.E.2d at 149. We further held that a state remedy is prohibited if the controversy is "inextricably intertwined with consideration of the terms of the collective bargaining agreement such that it cannot be considered independent thereof." *Id.* at 148. In the present case, Janet's claim is not based upon any of Benny's rights under the collective bargaining agreement. As we held above, Janet's claim refers to a personal controversy that occurs at, but is independent of, the workplace.

■ Benny contends that Janet's petition for a protective order did not comply with Ind.Code § 34–26–2–2(2). He states that the statute requires that a petition for a protective order must include "any allegation concerning the date and manner of specific acts or feared acts of abuse, harassment, or disruption of the peace of the petitioner...."

Benny misreads the statute, which requires that the petition include "any allegation concerning the date *or* manner of specific acts." (emphasis supplied). The apparent intent of the statute is to give the respondent sufficient notice to allow him to prepare a defense against the allegations contained in the petition. Our examination of Janet's petition reveals that it could have been more specific as to the dates of the acts, but the indication of a general time frame, coupled with the recitation of the manner of specific acts, was sufficient to give Benny notice of the allegations against him.

■ Benny also contends that the evidence presented at the hearing on the petition was insufficient to form the basis for the issuance of the protective order. Benny argues that the incidents of inappropriate physical contact and remarks

---

[1]. This case is unlike *Pompey v. Pryner,* 668 N.E.2d 1243 (Ind.Ct.App.1996), in which the petitioner was seeking a protective order that would have prevented the respondent from even entering his place of employment.

were too infrequent to warrant the issuance of a permanent protective order. He further argues that "such conduct, even if it may have been unpleasant, would not constitute egregious abuse of Janet but instead would constitute ordinary horseplay in the workplace." Appellant's Brief at 15.

Janet alleged in her petition that on five occasions Benny pressed his body against her and "humped" her. She also alleged a specific occasion where Benny took her statements out of context and expressed that he loved it when "she talked dirty" to him. At the hearing, she testified concerning these and other incidents of Benny's behavior toward her. The trial court exercised its authority in determining the credibility of the evidence and found that Janet was telling the truth about Benny's actions toward her.

If at least one of the allegations of abuse, harassment, or disturbing the peace made in the petition for a protective order is proved at the hearing by a preponderance of the evidence, then the trial court shall issue the order. Ind.Code § 34–26–2–12. Having found that Janet was telling the truth about Benny's actions and that the actions were sufficient to constitute abuse, harassment, or disturbing of the peace, the trial court was obligated to follow the statute and issue the protective order. The trial court was well within its discretion in determining that Benny's actions were not "ordinary horseplay."

Benny contends that the protective order is "extremely overbroad, incomprehensible, and vague." He argues that the order denies him notice of what behavior is prohibited.

■■■ In determining whether a protective order is too vague, it is helpful to look at cases that evaluate the specificity required in a statute or in a contempt order. We have previously held that a statute is not unconstitutionally vague if "individuals of ordinary intelligence comprehend it to adequately inform them of the conduct proscribed." *See Vaillancourt v. State*, 695 N.E.2d 606, 610 (Ind.Ct.App.1998), *trans. denied.* A statute "need only inform the individual of the generally proscribed conduct ... [it] need not list, with itemized exactitude, each item of conduct prohibited." *Id.* Similarly, a contempt order "must be clear and certain so that there can be no questions as to what the person must do or not do, and no question regarding when the order is violated." *Consolidated Rail Corp. v. Estate of Martin*, 720 N.E.2d 1261, 1265 (Ind.Ct.App. 1999); *Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind.Ct.App.1999), *trans. denied.*

■■ Here, the protective order begins by tracking the language of Ind.Code § 34–26–2–12(1)(A), which obligates the trial court to order the respondent to "refrain from abusing, harassing, or disturbing the peace of the petitioner, by either direct or indirect contact." The protective order then goes on to address the specific circumstances of this case, i.e. Benny's propensity to commit prohibited acts only when he and Janet are at work. In so doing, the order limits the extent of its application to "their mutual place of employment." It then specifically orders Benny not to speak or make bodily contact with Janet at the workplace or to make any remarks in her presence that are "not compelled by the employment situation in which they mutually engage."

Benny's vagueness challenge refers to the mandatory statutory language included in the protective order, not the more specific language drafted by the trial court. In essence, Benny is challenging the validity of the statute because invalidation of the statutory language in the protective order is also invalidation of the statute. However, Benny makes no attempt to show that the statute requiring the language is unconstitutionally vague. We will not invalidate the statute on our own motion.

Benny's primary concern is that the general statutory language found in the protective order will subject him to sanctions for any activity that Janet might

perceive as threatening. Therefore, he is concerned that his actions will be governed by subjectivism. We do not believe that this language places Benny in such peril. The language of the protective order includes terms that are to be interpreted by an objective standard. The protective order requires Benny to refrain from those activities that a person of ordinary intelligence would understand as constituting abuse, harassment, and disturbing the peace.[2]

■ Benny challenges as overbroad the portion of the protective order that mandates that he "make no remarks in [Janet's] presence not compelled by the employment situation in which they mutually engage." He contends that this portion is so overbroad as to violate his free speech rights guaranteed by the First Amendment to the United States Constitution. He cites *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) in support of his contention.

In *Madsen*, the Supreme Court held that an injunction must "burden no more speech than necessary to accomplish its objective." 114 S.Ct. at 2526. The Court expressed its belief that this standard is the First Amendment equivalent of the general standard that " 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.' " *Id.* at 2525 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979)).

Benny argues that prohibiting him from saying anything in Janet's presence while at the workplace is more burdensome to him than is necessary to provide Janet with relief from his abuse, harassment, and/or disturbance of the peace. He main-

tains that it would have been sufficient to order him to refrain from saying anything in an abusive, harassing, or threatening manner. He further argues that Janet did not request such a broad prohibition.

The record discloses that one of Janet's requests pertained to her desire to be free of general harassment. In her statements to the trial court, Janet's attorney emphasized that both Benny and Janet could do their respective jobs with little or no verbal interaction. In her testimony to the trial court, Janet emphasized that Benny's harassment could be subtle, and in that subtlety, could be much more threatening to Janet than any blatant statements of an abusive, harassing, or threatening nature. We find from these facts that Janet was requesting a broad prohibition that would address all forms of communication at the workplace.

Furthermore, we note that it was the desire of the trial court to issue a standard protective order that would have wholly prevented Benny from coming within a certain distance of Janet. This desire was based on the trial court's realization that seemingly innocuous statements can be harassing or threatening in the manner and tone in which they are delivered. Indeed, threats can be communicated in statements made by an insensitive person who considers the statements to be "ordinary horseplay." Of course, under this type of order the very fact that the respondent is prevented from being in the petitioner's presence places a limitation on the respondent's First Amendment rights of speech and association. Realizing that a standard order would not be appropriate in the workplace, the trial court fashioned an order that would accomplish the same thing as the standard order while allowing both parties to continue in their gainful occupations. We believe the order is no more

2. Benny has provided this court with an appendix that includes an affidavit for probable cause for his arrest based upon the violation of the general language of the protective order. He cites this affidavit in an attempt to bolster his contention that the protective or-

der is too vague. Our review of the affidavit discloses circumstances which could be characterized by a person of ordinary intelligence as harassment or disturbing the peace. The affidavit is not an example of Benny's fear that he is enslaved by Janet's sensibilities.

restrictive than that necessary to accomplish the trial court's intent.

The trial court's issuance of a protective order is affirmed.

RILEY, J., and NAJAM, J., concur.