Anthony WINEBRENNER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 57A03–0212–CR–411.

Court of Appeals of Indiana.

July 1, 2003.

---

Jeffrey S. Arnold, Albion, IN, Attorney General of Indiana, Attorney for Appellant.

Steve Carter, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Anthony Winebrenner brings this interlocutory appeal challenging the trial court's denial of his motion to suppress evidence. He contends that the police did not have probable cause

to arrest him for violation of a protective order, and therefore the police had no right to search his person incident to the arrest. Concluding that the police officer did have probable cause to arrest Winebrenner for invasion of privacy, we affirm and remand this cause to the trial court for further proceedings.

## FACTS

On December 12, 2001, a protective order was issued barring Winebrenner, who was then thirty-one years old, from "abusing, harassing, or disturbing the peace" of sixteen-year-old Heather Herron "by either direct or indirect contact." Appellant's App. p. 14. An adult member of Heather's household petitioned for the protective order because Heather was an unemancipated minor. During the early morning hours of January 27, 2002, Albion Police Officer Brian Keger stopped an automobile being driven by Amanda Chester. He had noticed that the automobile was about to lose its license plate.

Officer Keger saw Winebrenner in the automobile's front passenger seat and Herron in the back seat. He testified that at the time of the stop he was aware that Herron's "parents [had] put a protective order against Anthony Winebrenner to stay away from Heather Herron and other immediate family." Tr. p. 8. Officer Keger also testified that he observed a copy of the protective order on another officer's desk shortly before leaving for his patrol on January 27. According to Officer Keger's testimony, the protective order was about to be entered on the other officer's computer. During the traffic stop, Officer Keger asked Winebrenner why he was violating the protective order. Winebrenner replied that he had called Chester for a ride because his car had broken down in Auburn and Herron just happened to be in the car when Chester arrived. Officer Keger then arrested Winebrenner for violating the protective order, which is invasion of privacy,[1] a class B misdemeanor. Upon searching Winebrenner, Officer Keger found a cigarette pack containing marijuana and methamphetamines.

The State charged Winebrenner with Possession of Methamphetamine,[2] a class D felony, and Possession of Marijuana,[3] a class A misdemeanor. Arguing that Officer Keger had no probable cause to arrest him, Winebrenner filed a motion to suppress the evidence of marijuana and methamphetamines found on his person during the search incident to his arrest. After a hearing on the motion, the trial court denied it. Winebrenner now brings this interlocutory appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

Winebrenner challenges the trial court's denial of his motion to suppress. In reviewing the trial court's decision, we must determine if there was sufficient evidence to support the ruling. *Murphy v. State,* 747 N.E.2d 557, 559 (Ind.2001). We do not reassess the credibility of witnesses. *Kenworthy v. State,* 738 N.E.2d 329, 331 (Ind. Ct.App.2000), *trans. denied.* We consider the evidence favorable to the trial court's ruling and any uncontradicted substantial evidence to the contrary. *See Murphy,* 747 N.E.2d at 559 (emphasis added). A trial court's findings will be set aside only if clearly erroneous. *Id.*

### II. Challenge Under Fourth and Fourteenth Amendments

■ Winebrenner argues that the warrantless search of his person was not con-

---

1. Ind.Code § 35–46–1–15.1(a) (Supp.2001).

2. Ind.Code § 35–48–4–6.

3. Ind.Code § 35–48–4–11.

ducted incident to a lawful arrest. More specifically, Winebrenner contends that, while he was in Herron's presence, there was no evidence that he was abusing or harassing her or disturbing her peace. Absent such evidence, according to Winebrenner, Officer Keger had no probable cause to arrest him for invasion of privacy.

The Fourth[4] and Fourteenth[5] Amendments to the United States Constitution prohibit police from conducting warrantless searches and seizures except under limited circumstances. *See Perry v. State,* 638 N.E.2d 1236, 1240–41 (Ind.1994); *Wright v. State,* 593 N.E.2d 1192, 1198–99 (Ind.1992). "When a search is conducted without a warrant, the State must prove that an exception to the warrant requirement existed at the time of the search." *White v. State,* 772 N.E.2d 408, 411 (Ind. 2002). An officer who searches a person incident to a lawful arrest is an example of one such exception. *Id.* (citing *Chimel v. California,* 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

An officer may make a warrantless arrest of a person when the officer has probable cause to believe the person has committed a misdemeanor in his presence. *Walker v. State,* 764 N.E.2d 741, 743 (Ind. Ct.App.2002). Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that the suspect had committed a criminal act. *Ortiz*

*v. State,* 716 N.E.2d 345, 348 (Ind.1999). The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. *Id.* The facts and circumstances need not relate to the same crime with which the suspect is ultimately charged. *Id.*

A person who knowingly or intentionally violates a protective order issued under Indiana Code section 34–26–2–12(1)(B) commits "invasion of privacy," a class B misdemeanor. Ind.Code § 35–46–1–15.1(a) (Supp.2001). At the time the protective order was issued in December 2001, the trial court was statutorily permitted to order a person "to refrain from abusing, harassing, or disturbing the peace of a member of the petitioner's household, by either direct or indirect contact." Ind. Code § 34–26–2–12(1)(B) (Supp.2001). Winebrenner argues that he was in Herron's presence but was not abusing or harassing her or disturbing her peace. In his view, there was no probable cause to arrest him for invasion of privacy.

To the contrary, Officer Keger had knowledge of facts and circumstances that would warrant a person of reasonable caution to believe that Winebrenner had committed invasion of privacy. *See Ortiz,* 716 N.E.2d at 348. First, Officer Keger knew that Herron's parents had obtained a court order to protect their sixteen-year-old daughter from thirty-one-year-old Winebrenner. Second, Officer Keger saw

---

4. The actual text of the Fourth Amendment reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

5. The actual text of the Fourteenth Amendment provides in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

the protective order just hours before he encountered Winebrenner and Herron. Finally, Winebrenner acknowledged to Officer Keger that he was violating the protective order. From these facts and circumstances, a person of reasonable caution would be warranted in believing that Winebrenner was violating the protective order and thus was committing the offense of invasion of privacy. Thus, Winebrenner's challenge on Fourth and Fourteenth Amendment grounds must fail.

### III. Challenge Under the Indiana Constitution

Winebrenner also maintains that the search violated Article 1, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Ind. Const. art. I, § 11. Despite the fact that the text of Article I, Section 11 is nearly identical to the Fourth Amendment, Indiana courts interpret and apply it "independently from federal Fourth Amendment jurisprudence." *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind.2001). "In resolving challenges asserting this section, courts must consider the circumstances presented in each case to determine 'whether the police behavior was reasonable.'" *Id.* (quoting *Brown v. State*, 653 N.E.2d 77, 79 (Ind.1995)). "We require the State to 'bear the burden of showing that, in the totality of the circumstances, the intrusion was reasonable.'" *Id.* (quoting *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind.1999)). "'Admissibility is lawful if the court can declare the process reason-able.'" *Id.* (quoting *Brown*, 653 N.E.2d at 79). For the same reasons listed above, the totality of the circumstances indicates that Officer Keger's search was reasonable. He knew that Herron's parents had obtained the protective order, and he recognized both Herron and Winebrenner in the vehicle. Winebrenner also acknowledged to Officer Keger that he was violating the protective order. Therefore, the trial court committed no error in denying the motion to suppress.

Judgment affirmed.

DARDEN, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Although he acknowledged being in the presence of Heather, Winebrenner did not, as stated by the majority, "[acknowledge] to Officer Keger that he was violating the protective order." Slip op. at 6. To the contrary, Winebrenner stated that Heather was simply in the vehicle driven by Ms. Chester when it arrived to assist Winebrenner. There is no reasonable inference that the contact between Winebrenner and Heather was such as to constitute abuse, harassment, or disturbing of Heather's peace.

One may speculate that under the circumstances, Heather was a willing participant in the contact with Winebrenner but the evidence does not reflect such as a fact. Nevertheless, although the potential of the contact might have led to a violation of the order, the mere fact of an inadvertent and unintended contact does not, in my view, give rise to probable cause for an arrest for a violation of the protective order.

The statute in effect at the time in question, I.C. § 34-26-2-12, recognized that the prohibited abuse, harassment, or dis-

turbing the peace of the protected person could be accomplished by direct or indirect contact, but it did not contemplate prohibition of contact in and of itself.

The protective order in question might properly have restricted Winebrenner from being within the physical presence or proximity of Heather but it did not do so. Appendix at 14. See *Gordon v. Gordon,* 733 N.E.2d 468 (Ind.Ct.App.2000). A broadly stated protective order, as here involved, is not overly vague if it requires the person targeted by the order "to refrain from those activities *that a person of ordinary intelligence would understand as constituting abuse, harassment, and disturbing the peace." Id.* at 473 (emphasis supplied). As I view the facts, a person of ordinary intelligence would not consider Winebrenner's conduct as abusive, harassing, or as disturbing Heather's peace and privacy.

Furthermore, the arrest of Winebrenner was made for the offense of invasion of privacy, a Class B misdemeanor under I.C. § 35–46–1–15.1(a) which requires that the defendant "knowingly or intentionally" violate the protective order. There is absolutely no evidence that Winebrenner knowingly or intentionally engaged in conduct which might be reasonably believed to be abusive, harassing, or disturbing of Heather's peace and privacy. Nor is there any evidence that Deputy Keger reasonably believed Winebrenner's actions to be in violation of the prohibitions of the protective order. To the contrary as indicated by Deputy Keger, he believed the protective order had been obtained by Heather's parents because they wished "Winebrenner to stay away from Heather Herron and other immediate family." Tr. at 8.

Deputy Keger's perception of why Heather's parents sought the protective order does not translate into the prohibitions of the order itself. Nor does it give rise to probable cause to believe that Winebrenner was in violation of the order itself, as issued.[6]

I would reverse and remand with instructions to grant the Motion to Suppress.

---

**6.** Neither does the fact that Winebrenner may have thought that he was not supposed to be with Heather alter the prohibitions of the order itself.