## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2020, 10:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark Small
Indianapolis, Indiana

Roberta L. Ross
Ross & Brunner
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of B.Y.,

Andrea Yanes-Mirabal,

*Appellant-Respondent,*

v.

Pardeep Badasay,

*Appellee-Petitioner.*

March 30, 2020

Court of Appeals Case No. 19A-JP-1645

Appeal from the Hamilton Circuit Court

The Honorable Paul A. Felix, Judge

Trial Court Cause No. 29C01-1812-JP-1852

**Kirsch, Judge.**

[1] Andrea Yanes-Mirabal ("Mother") appeals the trial court's order that found her in contempt and awarded primary physical and sole legal custody of B.Y., the

parties' child ("Child"), to Pardeep Badasay ("Father"). She raises the following two issues for our review:

> I. Whether the trial court abused its discretion when it found Mother in contempt; and

> II. Whether the trial court abused its discretion when it awarded primary physical custody of B.Y. to Father.

We affirm.

## Facts and Procedural History

Mother and Father were in an "on again, off again" relationship that began in 2013. During the parties' relationship, Mother was employed as a flight attendant with a major domestic airline. The cities she flew out of (her bases of operations) were Chicago, Illinois; Dallas, Texas; and Miami, Florida. Although Mother had an Indiana driver's license and received her mail at her parents' house, located in Carmel, Indiana, Mother claimed that she was never domiciled in Indiana.

Mother became pregnant by Father in 2017. At that time, she was working out of Miami and continued to do so until approximately three months prior to Child's birth. She then took a leave-of-absence and returned to Indiana. Child was born on May 2, 2018. The parties ended their relationship four or five months before Child was born. When Mother gave birth to Child, Mother was living in Westfield, Indiana, and Father was living in Fishers, Indiana, with his parents. Father had been living with his parents since February 2018.

[5] On May 28, 2018, Father filed in the Marion County trial court a Verified Petition to Request DNA Testing, Establish Paternity, Physical Custody, Parenting Time and Child Support ("May 28 Petition to Establish Paternity").[1] Around September 5, 2018, the airline contacted Mother and told her that she was required to return to work by October 29, 2018, or risk losing her job. On October 11, 2018, Mother filed in the Marion County trial court a Verified Notice of Intent to Relocate to Miami. The following day, Father filed an objection to the relocation ("October 12 Objection to Relocation") and also filed a motion for preliminary injunction ("October 12 Motion for Preliminary Injunction").

[6] On October 23, 2018, the trial court held a preliminary evidentiary hearing for the sole purpose of "determining whether or not the [court] is going to impose a Preliminary Restraining Order preventing the relocation of [Child to Florida] pending further adjudication of the outstanding matters in this matter." *Tr. Vol. 2* at 3. At the conclusion of the hearing, the court took the matter of relocation under advisement. The court also set a hearing for November 20, 2018, to address issues of parenting time and custody. Additionally, on October 23, the court issued an order that "allow[ed] Mother to take [Child] to Florida with her, under the strict understanding that she [was] to bring [Child] back to Indiana with her when she return[ed] for court on 11/9/18 and 11/20/18."

---

[1] The paternity action was filed in Marion County because at the time, Father claimed he was living in a townhome in Indianapolis. However, the Marion County trial court later found Father's Indianapolis residency to be questionable because by August 2018, Father's townhome was in foreclosure.

*Appellant's App. Vol. 2* at 23. The order established parenting time for Father, which was to take place on the days when Mother returned to Indianapolis, directed Mother to assist Father in learning how to care for Child (for example, instruct Father in how to change a diaper); and ordered Father to participate in an age-appropriate parenting life-skills course. *Tr. Vol. 2* at 67; *Appellant's App. Vol. 2* at 23.

[7] On October 26, 2018, Mother filed in the Marion County trial court a motion for transfer of venue ("October 26 Motion for Transfer of Venue"). The court held a hearing on the matter on November 20, 2018 and issued the following order: "The Court is granting the request for transfer of venue. The Court is going to issue a temporary order on the request for restraining order and an interim order on parenting time, in light of the fact the Court has already heard evidence. Thereafter, this matter will be venued to Hamilton County." *Appellant's App. Vol. 2* at 24.

[8] On December 14, 2018, the Marion County trial court issued a detailed Interim Order on Establishing Paternity that addressed Father's May 28 Petition to Establish Paternity, his October 12 Objection to Relocation, and his October 12 Motion for Preliminary Injunction – as well as Mother's October 26 Motion for Transfer of Venue. The order reads in relevant part:

> The Court being duly advised in the premises and having considered IC 31-14-13-2, IC 31-14-14-2 and the best interests of [Child], now orders as follows:

1. Based upon the evidence presented at the hearing on November 2[0], 2018, the Court finds that transfer of this matter to Hamilton County is proper. The evidence regarding Father's residence at the time of the filing of the petition to establish paternity is, at best, questionable. The Court is not willing to say that Father was intentionally deceitful in his verified petition with regard to his residence, but at the least Father's place of residence was in such a state of flux, that Hamilton County is the proper venue to hear this matter.

. . . .

3. That being said, the Court believes it is in [Child's] best interests to enter an interim order on parenting time and the request for temporary restraining order, as the Court has heard sufficient evidence to make an interim ruling on those, until such time as the matter can be heard in Hamilton County.

4. Paternity of the minor child is established by admission.

5. [Father] is the biological father of [Child].

. . . .

9. Where Mother's permanent residence is located is hotly contested by the parties. Father maintains that Mother lived in Indianapolis, flew out of Texas and Florida and would stay in "crash pads" when flying back and forth. Mother maintains that she has not lived in Indiana when working and that she has resided in Texas and Florida.

10. Mother states she has lived in Florida for three years. She had to return to work on October 29, 2018, or face termination. Mother flies out of Miami. Mother does not intend to remain in Indiana, despite the fact that her family is here.

11. Mother has placed significant restrictions upon Father's parenting time, since [Child] was born. Mother has only allowed Father to visit [Child] at her parents' home, with maternal grandmother supervising and those visits are generally an hour or so in duration. Mother has never allowed Father to have unsupervised parenting time with [Child].

12. Mother is still breastfeeding [Child] and intends to do so until [Child] is approximately 1½ years old.

13. Mother is working five days per week, day flights only. She returns to Indiana for two days, once per month.

14. Following the hearing on October 23, 2018, the Court ordered that Mother could take [Child] with her to Florida, in order to secure her continued employment and provide for the care of [Child], with specific orders as to the dates she must return to Indiana with [Child] and permit parenting time to occur.

15. Mother did not remove [Child] from Indiana without a court order.

16. IC 31-17-2.2-6 [(2006) provides as follows:] . . .

(b) The court may grant a temporary order permitting the relocation of the child pending a final hearing if the court:

> (1) determines that the notice required under IC 31-14-13-10 or this chapter was provided in a timely manner;

> (2) issues an order for a revised schedule for temporary parenting time with the child; and

> (3) reviews the evidence presented at the temporary hearing and determines that there is a likelihood that, after the final hearing, the court will approve the relocation of the child.

17. Mother's notice [of relocation] was not timely filed. The evidence demonstrates that she had notice of the date she would be required to return to work on or about September 5, 2018. Mother waited 36 days to file her notice, leaving only 18 days prior to her intended return to Miami.

18. Under a strict reading of I.C. 31-17-2.2-6(b), the Court must be able to find that the notice was provided timely pursuant to statute, in order to even consider the possibility of allowing [Child] to be temporarily relocated.

19. *The Court orders that [Child] may not be relocated from Indiana, pending further hearing in this matter.*

20. *Father is ordered to have parenting time pursuant to the age appropriate Indiana Parenting Time Guidelines [("IPTG")].*

21. *All ancillary provisions of the IPTG apply, including those on transportation and the opportunity for additional parenting time.*

22. Both parties are ordered to strictly comply with Indiana's Notice of Intent to Relocate Statute, I.C. 31-17-2.2.

23. The Court now orders this matter transferred to Hamilton County, Indiana for all future proceedings.

*Id.* at 25-29 (emphasis added). The parties' case was transferred to the Hamilton County trial court on or about December 21, 2018.

[9] Mother removed Child to Florida, in violation of the December 14 order. Thereafter, the following occurred in the Hamilton County trial court. On January 11, 2019, Mother filed a motion to reconsider the Marion County trial court's December 14 order. On January 14, 2019, Father filed a Verified Petition for Rule to Show Cause and Contempt Citation ("January 14 Contempt Petition"), alleging that Mother disobeyed the December 14 order when she relocated Child from Indiana and denied Father his parenting time. Father asked the trial court to (among other things) hold a hearing, find Mother in contempt of court, grant Father parenting time to make up for the time denied by Mother, and award him physical custody of Child.

[10] Also, on January 14, 2019, the trial court issued an order in error that directed (1) Mother to return Child to Indiana and not relocate Child from Indiana and (2) Father to have physical custody of Child.[2] The following day, Mother filed

---

[2] Mother did not include in her appendix a copy of the Hamilton County trial court's January 14, 2019 order. Accordingly, we take judicial notice of the filing. *See Banks v. Banks*, 980 N.E.2d 423, 426 (Ind. Ct. App.

a motion to clarify/reconsider the January 14 order. On January 16, 2019, the trial court issued the following order, clarifying its January 14 order:

> It was the Court's intention to set a hearing and provide no other immediate relief. Unfortunately, the Court did not sufficiently review the proposed order submitted to notice that additional relief was immediately being [o]rdered. To the extent that any relief other than a scheduling of a hearing was granted, it is now rescinded. . . . Specifically, the Court does not [o]rder the Child returned, does not [o]rder a modification of custody, and does not order attorney fees to be paid.

*Id.* at 39.

[11] On February 13, 2019, Father filed a combined motion for contempt and change of custody ("February 13 Motion for Contempt and Change of Custody"). On February 22, 2019, Mother filed a response to Father's February 13 Motion for Contempt and Change of Custody. On April 21, 2019, Mother filed a motion seeking childbirth expenses and attorney fees.

[12] On April 23, 2019, the Hamilton County trial court held a hearing on Father's May 28 Petition to Establish Paternity, Mother's October 26 Motion for Transfer of Venue, Father's January 14 Contempt Petition, his February 13 Motion for Contempt and Change of Custody, and Mother's motion for childbirth expenses and attorney fees. On April 30, 2019, the Hamilton County

---

2012) (explaining that judicial notice may be taken at any stage of the proceedings, including on appeal), *trans. denied*.

trial court issued its final order, including its findings of fact and conclusions thereon. The court's order reads, in relevant part,

> 3. The Father shall have sole legal and physical custody of the child. The Court [o]rdered Mother to exchange the Child no later than 3:00 p.m. on April 23, 2019.
>
> 4. Mother shall have parenting time pursuant to the Indiana Parenting Time Guidelines (IPTG) Section III when distance is a factor. . . . Mother may have overnights. If Mother returns to Indiana, she shall have parenting time pursuant to Section II which shall also be deviated to permit overnights on the midweek parenting time opportunity.
>
> . . . .
>
> 11. Mother willfully and without proper cause denied Father parenting time since the time of [Child's] birth.
>
> 12. Mother is found in contempt of court due to her non-compliance of Marion County's Interim Court Order issued December 14, 2018.
>
> 13. That Mother denied Father his right to visit [Child] over any other third[-]party non-household persons.
>
> 14. [That] Mother willfully and without cause disobeyed Court [o]rders prohibiting her from leaving the State of Indiana with [Child].
>
> 15. That Mother is further found in contempt of court for her willful and continued non-compliance with the Father's Court [o]rdered parenting time.

*Appellant's App. Vol. 2* at 42.[3]

Mother now appeals.

# Discussion and Decision

Neither party filed an Indiana Trial Rule 52(A) written request for special findings and conclusions thereon. Instead, the trial court directed Father's counsel to prepare a proposed order, share the order with Mother's counsel, and then submit the order to the court. *Tr. Vol. 3* at 20-21. We, therefore, treat the trial court's order as sua sponte findings of fact. *See Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006); *see also Estudillo v. Estudillo*, 956 N.E.2d 1084, 1089 (Ind. Ct. App. 2011).

Sua sponte findings control only as to the issues they cover, and a general judgment standard will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's judgment. *Id.* "[W]e may look both to other findings and beyond

---

[3] The Hamilton county trial court also made determinations regarding child support and Mother's childbirth expenses. The parties do not challenge those determinations.

the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013).

[16] There is a longstanding policy in our State that appellate courts should defer to the determinations of trial courts in family law matters. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). We accord this deference because trial courts directly interact with the parties and are thus in a superior position "to assess credibility and character through both factual testimony and intuitive discernment[.]" *Id.* Conversely, "appellate courts 'are in a poor position to look at a cold transcript of the record [ ] and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *D.C. v. J.A.C.*, 977 N.E.2d 951, 956-57 (Ind. 2012) (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)).

[17] We also note that Father has not filed an appellee's brief.

> Where the appellee fails to file a brief on appeal, we may, in our discretion, reverse the trial court's decision if the appellant makes a prima facie showing of reversible error. *McGill v. McGill*, 801 N.E.2d 1249, 1251 (Ind. Ct. App. 2004). In this context, prima facie error is defined as "at first sight, on first appearance, or on the face of it." *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006). This rule was established for our protection so that we can be relieved of the burden of controverting the arguments advanced in favor of reversal where that burden properly rests with the appellee. *McGill*, 801 N.E.2d at 1251.

*In re Visitation of C.L.H.*, 908 N.E.2d 320, 326-27 (Ind. Ct. App. 2009).

# I. Contempt

[18] Mother argues that the Hamilton County trial court abused its discretion when it found her in contempt of the Marion County trial court's December 14, 2018 order. Willful disobedience of any lawfully-entered court order of which the offender had notice is indirect contempt. Ind. Code § 34-47-3-1 (1998); *Francies v. Francies*, 759 N.E.2d 1106, 1118 (Ind. Ct. App. 2001), *trans. denied*. In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order. *Ind. High Sch. Athletic Ass'n v. Martin*, 765 N.E.2d 1238, 1241 (Ind. 2002). The order must be clear and certain such that there is no question regarding what a party may or may not do and no question regarding when the order is being violated. *Gordon v. Gordon*, 733 N.E.2d 468, 472 (Ind. Ct. App. 2000). A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. *Rendon v. Rendon*, 692 N.E.2d 889, 896 (Ind. Ct. App. 1998).

[19] Whether a party is in contempt of court is a matter within the trial court's discretion. *In re Paternity of M.F.*, 956 N.E.2d 1157, 1162 (Ind. Ct. App. 2011). A court's finding of contempt will be reversed only for an abuse of that discretion. *Id.* "A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law." *Id.* As with other sufficiency matters, we will neither reweigh evidence nor judge witness credibility. *Mitchell v. Mitchell*, 871 N.E.2d 390, 394

(Ind. Ct. App. 2007). "Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment." *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000) (internal quotations omitted). "Unless after a review of the entire record we have a firm and definite belief a mistake has been made by the trial court, the trial court's judgment will be affirmed." *Id.*

[20] First, Mother challenges three of the Hamilton County trial court's findings that supported its conclusion that Mother should be found in contempt of court, that is, the court's findings that: (1) Mother willfully denied Father parenting time since the time of Child's birth; (2) Mother failed to comply with the Marion County trial court's December 14, 2018 order; and (3) Mother has been in willful and continued non-compliance with Father's court-ordered parenting time. Although Mother challenges these findings, in essence, her argument is that the Hamilton County trial court could not have found her in contempt for failure to comply with court-ordered parenting time because neither the Marion County trial court nor the Hamilton County trial court issued an order regarding parenting time that Mother could have violated. We find this premise incorrect.

[21] To the contrary, the Marion County trial court's December 14, 2018 interim order addressed (among other things) parenting time. The court specifically stated in the order that it believed it was "in [Child's] best interests to enter an interim order on parenting time[.]" *Appellant's App. Vol. 2* at 26. The court found that Mother had placed significant restrictions on Father's parenting time

with Child by dictating where the visitations would occur and how long they would last, and insisting that Father's visitations with Child be supervised. The court ordered Father to have parenting time in accordance with the Indiana Parenting Time Guidelines ("IPTG"), as well as the opportunity for additional parenting time.

[22] Next, Mother takes issue with both trial courts' orders addressing the relocation of Child, and whether the orders regarding whether Mother was prohibited from relocating Child from Indiana were ambiguous or indefinite. Mother specifically contends that "any order preventing [her] from taking [Child] to Florida, at best, was unclear, and beyond that, was clear that she *could* take the child to Florida." *Appellant's Br.* at 16 (emphasis added). Mother maintains that she was twice told by the trial courts that "she could take the child to [and/or] keep [Child] in Florida" and that she "never was prohibited from leaving the State of Indiana with [Child]." *Id.* at 17.

[23] In support of her argument, Mother cites the Hamilton County trial court's January 16, 2019 order (clarifying its January 14 order), which stated:

> It was the Court's intention to set a hearing and provide no other immediate relief. Unfortunately, the Court did not sufficiently review the proposed order submitted to notice that additional relief was immediately being [o]rdered. To the extent that any relief other than a scheduling of a hearing was granted, it is now rescinded. . . . *Specifically, the Court does not [o]rder the Child returned, does not [o]rder a modification of custody, and does not order attorney fees to be paid.*

*Appellant's App. Vol. 2* at 39 (emphasis added). We conclude that the trial courts' orders regarding the relocation of Child were unambiguous and definite, and that it was clear that Mother was not to relocate Child from Indiana.

[24]  In its December 14, 2018 interim order, the Marion County trial court specifically ordered "that [Child] may *not* be relocated from Indiana, pending further hearing in this matter." *Id.* at 29 (emphasis added). After the case was transferred, the Hamilton County trial court issued an order on January 14, 2019, directing: (1) Mother to return Child to Indiana and not relocate Child from Indiana and (2) Father to have physical custody of Child. Two days later, the court issued a clarifying order, stating that the court intended only to set a hearing on the matters and did not intend to provide any immediate relief. Simply put, the court perceived the problem with its January 14 order and, essentially, corrected it with its January 16 order. However, the January 16 order did not remove the Marion County trial court's prohibition against Mother relocating Child from Indiana. Mother's arguments to the contrary are unavailing.

[25]  Mother also argues that the Marion County trial court erred when it applied the Indiana Relocation Statute, Indiana Code section 31-17-2.2, *et seq.*, in finding that Mother relocated Child to Florida without providing Father adequate notice. As set forth above in the recitation of the facts of this case, Mother filed her notice of intent to relocate Child from Indiana on October 11, 2018. However, the airline had contacted her thirty-six days earlier – on September 5,

2018 – to tell her that she was required to return to work in Florida by October 29, 2018, or risk losing her job.

[26] Mother contends that the relocation statute was not applicable because the Marion County trial court had yet to make an initial determination of the custody of Child. Mother maintains that the statute's notice requirement is meant to alert the trial court that a parent has relocated so that it may modify an *existing* child custody order if necessary. *See Dillion v. Dillion*, 42 N.E.3d 165, 167-68 (Ind. Ct. App. 2015) ("As Father's move, which occurred before proceedings in this case began, did not require the trial court to consider modification of an existing custody order, the relocation chapter was not implicated.").

[27] Mother is correct that the relocation statute was not implicated here, however, her argument is of no moment. In its final order, the Hamilton County trial court held Mother in contempt for interfering with Father's parenting time and removing Child to Florida in violation of the Marion County trial court's December 14 order – not because Mother failed to provide timely notice of relocation. No error occurred here.

[28] In sum, the Marion County trial court issued an unambiguous and definite order directing Father to have parenting time with Child, in accordance with the IPTG, and prohibiting Mother from relocating Child from Indiana. The evidence establishes that Mother had notice of the December 14 order; she willfully disobeyed the order by removing Child to Miami; and she significantly

restricted Father's parenting time.  The Hamilton County trial court found Mother to be in contempt of the December 14 order for her actions.  We conclude that the court did not abuse its discretion in doing so.

## II. Custody

[29] Mother next argues that the trial court abused its discretion when it awarded Father primary physical custody of Child.  Our standard of review of initial child custody determinations is well-settled.  A trial court's decision on child custody is reviewed for an abuse of discretion.  *Purnell v. Purnell*, 131 N.E.3d 622, 627 (Ind. Ct. App. 2019), *trans. denied*.

> In deference to the trial court's proximity to the issues . . . [w]e do not reweigh the evidence or determine the credibility of witnesses.  Instead, we consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment.  Finally, because the trial court was making an initial custody determination, it was required to consider all evidence from the time of Child's birth in determining the custody arrangement that would be in the best interest of Child.

*Hughes v. Rogusta*, 830 N.E.2d 898, 902 (Ind. Ct. App. 2005) (internal citations omitted).

[30] Indiana Code section 31-14-13-2 sets forth the factors for custody determination in a paternity action.  The court must determine custody in accordance with the best interests of the child, and consider all relevant factors, including:

> (1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parents;

> (B) the child's siblings; and

> (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian[.]

Ind. Code § 31-14-13-2.

[31] Mother takes issue with the fact that the Hamilton County trial court did not make specific findings on each factor in Indiana Code section 31-14-13-2. We note, however, that the trial court was not required to do so. *See Russell v. Russell,* 682 N.E.2d 513, 515 (Ind. 1997) ("Although a court is required to

consider all relevant factors in making its determination, it is not required to make specific findings [when making custody determinations]." Such findings are only required if requested in writing pursuant to Indiana Trial Rule 52(A). *Id.* at 515 n.2. Neither party made such a request. Also, we presume trial courts know and follow the law. *See Ramsey v. Ramsey,* 863 N.E.2d 1232, 1239 (Ind. Ct. App. 2007) ("[W]e generally presume trial courts know and follow the applicable law"). We may overlook this presumption "if the trial court's findings lead us to conclude that an unjustifiable risk exists that the trial court did not follow the applicable law." *Id*. Here, however, the thorough and thoughtful statement the trial court provided at the conclusion of the April 23 evidentiary hearing gives us no reason to override that presumption.

[32]   As to the statutory factors, the trial court found that Child had been in Mother's care since Child's birth, and that Mother was breastfeeding Child. The court found that "Mother [was not] doing anything to cause harm to [Child], physical harm[,]" and the court "believe[d] that [there was] no evidence . . . that [Child] would be in any physical harm in Father's care either." *Tr. Vol. 3* at 14. The trial court determined that Father lived in Hamilton County, Indiana, and Mother lived in Miami. The court found relevant "the fact that almost since the birth of [Child, Mother] has controlled with an iron fist almost when [Father] can see [Child]." *Id.* at 15. The court further found that "[Mother] leaves [Child] in her current apartment and has someone . . . completely unknown to Father care for [Child] . . . [and] allowed an unknown stranger to watch

[Child], someone who didn't even appear in court today to testify about her abilities to care for [Child.]" *Id.*

[33] The trial court provided a detailed statement establishing that the award of primary physical custody of Child to Father was in Child's best interest. The court's decision does not go against the logic and effect of the facts and circumstances that were before it. We, therefore, find the trial court followed the applicable law in making its determination and did not abuse its discretion in awarding Father primary physical custody of Child.

[34] Affirmed.

Bailey, J., and Mathias, J., concur.