Donald **JOHNSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0409–CR–477.**

Court of Appeals of Indiana.

June 8, 2005.

Transfer Denied Aug. 25, 2005.

Victoria Ursulskis, Marion County Public Defender, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, J.

### STATEMENT OF THE CASE

Appellant–Defendant, Donald Johnson (Johnson), appeals his convictions for robbery, a Class B felony, Ind.Code § 35–42–5–1; and carrying a handgun without a license, a Class A misdemeanor, Ind.Code § 35–47–2–1.

We affirm.

### ISSUE

Johnson raises one issue on appeal: whether the trial court erred when it denied his Motion to Suppress and admitted his confessions at trial.

### FACTS AND PROCEDURAL HISTORY

On December 6, 2003, L.P. Steward (Steward), the assistant manager of Popeye's Chicken (Popeye's), was making a deposit at a local bank when he was approached by two men, later identified as Jason Byrd (Byrd) and Johnson. Johnson, who was brandishing a gun, ordered Steward to give him the money. Steward complied and then fled. Byrd and Johnson then ran to a car driven by Dejaun Kilpatrick (Kilpatrick). Kilpatrick drove them to the apartment of Kelanda Honeycutt (Honeycutt), Byrd's girlfriend. There, the men divided the money.

After Steward had fled, he called the Indianapolis Police Department. Two days later, Detective John Correll (Detective Correll) was assigned to the case. Detective Correll first contacted Steward, who gave a detailed account of the robbery. On December 10, 2003, Detective Correll was contacted by another Popeye's employee, Andre McEachaem (McEachaem), who claimed that he had information about the robbery. After speaking with McEachaem, Detective Correll learned that McEachaem had taken statements from two Popeye's employees, Honeycutt and Al Nissah Rainey (Rainey). In her statement, Honeycutt claimed that three men, "Don–Don, Juan and Jason Byrd[,] had been involved in the robbery." (Transcript p. 17). Honeycutt further stated that the men used a green Chevy Caprice, which she believed had been towed a couple days after the robbery in an unrelated incident. Rainey also implicated a man named "Don–Don" in the robbery. (Tr. p. 18).

After receiving the information, Detective Correll checked police records to determine the validity of Honeycutt's statement concerning the Chevy Caprice. Although Detective Correll was unable to confirm whether a green Chevy Caprice had been used in the robbery because the victim had not seen the vehicle, he did learn that a vehicle matching Honeycutt's description had been towed a few days after the robbery. Further investigation revealed that the towed vehicle had been driven by Johnson and Kilpatrick.

On December 17, 2003, Detective Correll interviewed Kilpatrick, who implicated Johnson in the robbery. As a result, Detective Correll entered Johnson's name in a computer database to alert other officers that Johnson was wanted for questioning. However, no charges were filed against

Johnson and no warrant was issued for his arrest.

Several weeks later, on January 10, 2004, Indianapolis Police Officer Kevin Kern (Officer Kern) responded to a call that three males, one of whom was Johnson, were sitting in a parked car drinking alcohol. After approaching the vehicle, Officer Kern asked the men for identification. Officer Kern's investigation revealed that Johnson was under twenty-one years of age and "had an odor of alcohol on his breath." (Tr. p. 8). Officer Kern then checked the names in the computer database and learned that Johnson was wanted for questioning. As a result, Officer Kern immediately contacted Detective Correll, who instructed Officer Kern to bring Johnson in for questioning. Johnson was placed in handcuffs and transported to the Indianapolis Police Department.

When Johnson arrived, he was taken to Detective Correll's office. There, Detective Correll read Johnson his *Miranda*[1] rights and informed him that he was a suspect in a robbery. However, Detective Correll did not have Johnson sign a waiver of his *Miranda* rights at that time. Although Johnson initially denied any involvement in the robbery, he later indicated his willingness to give a statement after learning that Kilpatrick, Honeycutt, and Rainey had implicated him in the robbery. To determine if his statement was going to be relevant, Detective Correll conducted a pre-tape interview. After Johnson began to admit his involvement in the robbery, Detective Correll stopped Johnson and told him that he was going to tape his statement. Detective Correll turned on the tape and again advised Johnson of his *Miranda* rights. Detective Correll then had Johnson read a "Waiver of Rights" form aloud and sign it. (State's Exhibit 1). When Detective Correll asked Johnson if he understood his waiver, Johnson responded that he did. In his statement, Johnson admitted to robbing Steward at gunpoint.

On January 12, 2004, Johnson was charged with Count I, robbery, a Class B felony, Ind.Code § 35–42–5–1; and Count II, carrying a handgun without a license, a Class A misdemeanor, I.C. § 35–47–2–1. On July 8, 2004, Johnson filed a motion to suppress both statements. The hearing on the motion was held July 12, 2004, the morning of Johnson's jury trial. Following the hearing, the trial court denied Johnson's motion. Thereafter, Johnson waived his right to a jury trial and proceeded to a bench trial. The trial court found Johnson guilty as charged. On August 6, 2004, Johnson was sentenced to eight years imprisonment with two years suspended, to be served on probation, for the robbery. He was also ordered to serve a one-year concurrent sentence for carrying a handgun without a license.

Johnson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. *Standard of Review*

■ We review the denial of a motion to suppress similar to claims challenging the sufficiency of the evidence. We do not reweigh the evidence. *Wessling v. State*, 798 N.E.2d 929, 934 (Ind.Ct.App.2003). Rather we consider the evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Id.*

### II. *Admissibility of the Confessions*
#### A. *Probable Cause*

■ Johnson first contends that Officer Kern did not have probable cause to arrest

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

him for robbery when he was apprehended in the parking lot. Johnson concedes that a police officer may make a warrantless arrest when he has probable cause to believe the defendant committed a felony. *See* Ind.Code § 35–33–1–1(a)(2) ("A law enforcement officer may arrest a person when the officer has ... probable cause to believe the person has committed or attempted to commit, or is committing or attempting to commit, a felony."). Johnson also concedes that Detective Correll testified at the suppression hearing and related the information he had concerning Johnson's involvement in the robbery. Nevertheless, Johnson maintains that the information provided by Detective Correll was "without detail, corroboration, or any semblance of connectivity of a criminal act to Johnson ...." (App.Br. p. 19). Thus, Johnson contends that the trial court did not have sufficient facts before it on which to make an independent determination of probable cause for robbery. Consequently, Johnson contends that his confessions should have been suppressed under the federal and state constitutions.

■ The Fourth Amendment protects against unlawful seizures. *Winebrenner v. State*, 790 N.E.2d 1037, 1040 (Ind.Ct.App. 2003). Thus, as a general rule, a confession, which is the product of an illegal arrest, must be suppressed. *Hughes v. State*, 179 Ind.App. 336, 385 N.E.2d 461, 465 (1979), *trans. denied.* The State responds, however, that Officer Kern lawfully arrested Johnson for consumption of alcohol by a minor.

■ Pursuant to statute, a warrantless arrest is permitted if a police officer has "probable cause to believe the person is committing or attempting to commit a misdemeanor in the officer's presence." I.C. § 35–33–1–1(a)(4). "Probable cause adequate to support a warrantless arrest exists when, at the time of the arrest, the officer has knowledge of facts and circumstances that could warrant a person of reasonable caution to believe that the suspect committed a criminal act." *Wessling*, 798 N.E.2d at 934–35. The offense of illegal possession is a Class C misdemeanor and is committed by a minor who knowingly consumes alcohol. I.C. § 7.1–5–7–7(a)(2). "The term 'minor' means a person less than twenty-one (21) years of age." I.C. § 7.1–1–3–25.[2]

At the suppression hearing, Officer Kern testified that Johnson's identification card revealed that Johnson was under twenty-one years of age. Officer Kern further testified that he smelled alcohol on Johnson's breath. Thus, Officer Kern had sufficient knowledge of facts and circumstances that would cause a reasonable person to believe that Johnson had committed illegal possession in his presence. *See Walker v. State*, 764 N.E.2d 741, 743 (Ind. Ct.App.2002) (holding that consumption of alcohol by a minor is committed in police officer's presence when "evidence of consumption is readily apparent from the minor's person to an officer in the minor's presence"), *reh'g denied.*[3]

---

2. The definitions contained in Chapter 3 apply throughout Title 7.1 unless otherwise provided. I.C. § 7.1–1–3–1.

3. Because we conclude that Officer Kern had probable cause to arrest Johnson for illegal possession, we need not consider whether there was probable cause to arrest for robbery. However, we note that the transcript reveals that the latter did not occur. Both the case report, generated by the Indianapolis Police Department for Johnson's robbery charge, and the probable cause affidavit reveal that Johnson was not placed under arrest for robbery until after he confessed. The case report specifically provides that after Johnson was brought to Detective Correll's office and confessed, he was "subsequently arrested for Class B felony robbery." (Defendant's Exhibit A). Similarly, the probable cause affidavit,

While lawfully in custody on the consumption charge, Johnson confessed to the robbery. While it is evident that the police were interested in questioning Johnson concerning his suspected involvement in the robbery, we find nothing unlawful with Johnson's arrest. *See Cornett v. State*, 536 N.E.2d 501, 504–05 (Ind.1989) (finding defendant's warrantless arrest for public intoxication lawful when police observed defendant in intoxicated state in public place, even though arrest was made while police were investigating defendant's suspected involvement in a robbery and evidence discovered after arrest was admitted at defendant's trial for robbery); *Foster v. State*, 633 N.E.2d 337, 346–47 (Ind.Ct.App.1994) (concluding defendant's arrest, after which defendant confessed to murder, was lawful and was not a ruse to detain defendant in connection with homicide investigation, where police based arrest on discovery of handgun and·suspected marijuana and cocaine during lawful search), *trans. denied.*

■ Similarly, we find no violation of the Indiana Constitution. Article I, Section 11 requires police conduct to be reasonable. *Winebrenner*, 790 N.E.2d at 1041. Because Officer Kern observed

Johnson commit the misdemeanor offense of illegal possession in his presence, he acted reasonably in arresting him on this basis and subsequently questioning him as a suspect in the robbery. *See id.* (finding, for purpose of Article I, Section 11 analysis, that police officer acted reasonably in arresting defendant for misdemeanor offense committed in his presence and conducting search incident to that arrest).

### B.  *Waiver of Miranda Rights*

Next Johnson contends that his first statement should have been suppressed because the police did not obtain a valid waiver of his *Miranda* rights. According to Johnson, the "failure to get acknowledgement of understanding and waiver equates to the failure of giving a *Miranda* warning at all." (App.Br. p. 14). Relying on a recent decision by the Supreme Court, *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), Johnson further maintains that the second taped statement, which was given following full *Miranda* warnings and waiver, also should have been suppressed because it was not distinct from the first, flawed *Miranda* procedure.[4]

---

which the State filed on January 12, 2004, is based, in part, upon Johnson's confession. (*See* Appellant's App. pp. 17–18).

4.  We note that in his Motion to Suppress and at the hearing on the motion to suppress, Johnson maintained that his first statement was inadmissible because Detective Correll had not timely given him *Miranda* warnings. No specific contention concerning waiver was raised. Normally, the failure to raise certain grounds in the motion to suppress and at trial results in waiver of an issue on appeal. *See Ackerman v. State*, 774 N.E.2d 970, 974 n. 6 (Ind.Ct.App.2002) (concluding defendant waived contention that police obtained statement in violation of *Miranda* by failing to raise that issue in motion to suppress and at trial), *reh'g denied, trans. denied.*

However, when an error is apparent in the record, despite the defendant's failure to raise it, this court will review the issue. *See Willsey v. State*, 698 N.E.2d 784, 789 (Ind.1998) (concluding defendant's pre-trial suppression hearing testimony, during which she claimed multiple requests for counsel were ignored by police, preserved claim that certain statements should have been suppressed after a request for counsel, despite fact that focus of pre-trial suppression hearing was whether defendant's waiver and statement were voluntary), *reh'g denied.* In this case, Johnson testified at the suppression hearing that he did not sign the "Waiver of Rights" until he went on the tape and that was "the first time that [he'd] seen [the] document." (Tr. p. 42). Thus, despite Johnson's failure to specifically raise waiver in his Motion, his testimony properly preserves the issue on appeal.

The State responds that Johnson's waiver was valid for the following reasons: (1) Johnson was fully advised of his *Miranda* rights; (2) Johnson indicated his willingness to give a statement after he was confronted with the evidence against him; (3) Johnson never indicated that he did not understand his rights; and (4) Johnson is a literate adult who is able to understand his rights. · The State further contends that even if the police failed to obtain a valid waiver with regard to the first statement, the second statement is admissible under the authority of *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

■ For a statement to be admissible, the State must show that a defendant's waiver was knowing and voluntary. *Deckard v. State,* 670 N.E.2d 1, 6 (Ind.1996). "A waiver of one's *Miranda* rights occurs when the defendant, after being advised of those rights and acknowledging that he understands them, proceeds to make a statement without taking advantage of those rights." *Ringo v. State,* 736 N.E.2d 1209, 1211–12 (Ind.2000). To determine whether a valid waiver was made, courts look to the totality of the circumstances. *Id.* at 1212.

■ "The analysis begins with the presumption that appellant did not waive his *Miranda* rights." *Deckard,* 670 N.E.2d at 6. A written or oral waiver is not required to establish a valid waiver. *Carter v. State,* 730 N.E.2d 155, 157 (Ind. 2000). However, waiver may not be presumed from a defendant's silence or a confession. *N.C. v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Explaining the validity of an inferred waiver, the *Butler* court stated as follows:

> An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but it

is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the action and words of the person interrogated.

*Id.*

■ Here, it is clear that Johnson did not sign a waiver before he made the first statement. There is also no evidence that Johnson was given a copy of the "Waiver of Rights" or was even asked whether he understood his rights after he was given his *Miranda* warnings. Thus, even if Johnson voluntarily waived his rights, as evidenced by his willingness to give a statement once confronted with the evidence against him, the transcript is devoid of any evidence, apart from his silence and the statement itself, showing that Johnson acknowledged that he understood his rights. Johnson's literacy also cannot support an acknowledgement of his rights, as he was not provided with a copy of the "Waiver of Rights" form. Thus, we must conclude that the State did not establish that Johnson knowingly and voluntarily waived his *Miranda* rights. *See Morales v. State,* 749 N.E.2d 1260, 1266 (Ind.Ct.App.2001) (concluding Spanish-speaking defendant who signed waiver, did not knowingly and voluntarily waive *Miranda* rights given in Spanish where police officers failed to translate waiver portion of "Advice of

Rights" form, never asked defendant in Spanish if she understood rights, and never explained that signing form would result in waiver).[5] As a result, the first statement was inadmissible.

■ Nevertheless, admitting the statement was harmless because Johnson's second taped confession was properly admitted. *See Davies v. State*, 730 N.E.2d 726, 735 (Ind.Ct.App.2000) ("Statements obtained in violation of *Miranda* and erroneously admitted are subject to harmless error analysis."), *reh'g denied, trans. denied, cert. denied*, 532 U.S. 945, 121 S.Ct. 1410, 149 L.Ed.2d 352 (2001). Johnson relies on *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) in support of his contention that the second statement should have been suppressed. In *Seibert*, the Court disapproved of an interrogation technique in which police officers purposefully withhold *Miranda* warnings until a confession is obtained, and thereafter, give *Miranda* warnings and obtain a waiver before obtaining a second similar confession. *Id.* at 2610–11. The Court held that when such a technique is utilized, the subsequent confession must be suppressed because "the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content." *Id.* at 2610.

In its decision, however, the *Seibert* court specifically noted that the case was to be distinguished from a prior decision, *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). *Id.* at 2611–12. In *Elstad*, the Court held that a second statement, given after full *Miranda*

warnings and waiver, was admissible, following an unwarned but voluntary statement. *Id.* at 318, 105 S.Ct. 1285. The *Elstad* Court reasoned that a "subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* at 314, 105 S.Ct. 1285. The *Seibert* court described *Elstad* as a case involving a "good-faith *Miranda* mistake ... open to correction by careful warnings ... and posing no threat to warn-first practice generally," while characterizing the case at hand as one involving a "police strategy adapted to undermine the *Miranda* warnings." *Id.* at 2612.

In this case, we conclude Detective Correll's failure to obtain a valid waiver with regard to the first statement involved a good-faith *Miranda* mistake open to correction by careful warnings, and therefore, did not render the second statement inadmissible. At the suppression hearing, Detective Correll testified that during a pre-tape interview, which he regularly conducts, he always gives *Miranda* warnings first and then asks defendants to read aloud the "Waiver of Rights." While Detective Correll further testified that he could not remember if he had asked Johnson to read the waiver, it was his practice to do so. In addition, while Detective Correll also testified that he typically waits until he is taping before obtaining a signed waiver, a written waiver is not required to establish that it is knowing and voluntary. *Carter*, 730 N.E.2d at 157.

---

5. The State relies on *Jackson v. State*, 735 N.E.2d 1146 (Ind.2000) for the proposition that a defendant's failure to indicate his confusion concerning his rights means he understands them. While the court in *Jackson* commented on the defendant's failure to indicate his lack of understanding concerning his

rights in its analysis, at issue was whether the defendant's statement was voluntary. *Id.* at 1153–54. Further, given that the Supreme Court has held that mere silence is not sufficient to demonstrate a valid waiver, we cannot say that *Jackson* supports the State's contention.

Finally, there is no evidence that Johnson's first statement was coerced, which would prevent subsequent *Miranda* warnings from curing the prior *Miranda* violation. *See id.* (recognizing that voluntary confession is one "not induced by violence, threats, or other improper influences that overc[o]me [a] defendant's free will"). In fact, the transcript reveals Johnson's willingness to make a statement, after having been confronted with the evidence against him. At the suppression hearing, Johnson testified that after Detective Correll revealed Rainey's, Honeycutt's and Kilpatrick's statements implicating him in the robbery, he "told [Detective Correll that] since everyone wants to tell part of the story[,] I'm going to tell the other part . . . ." (Tr. p. 40). Johnson further testified that he "started telling [Detective Correll] the story from the beginning to the end." *Id.* Thus, the subsequent administration of *Miranda* warnings and valid waiver were sufficient to remove the conditions that precluded admission of the first statement. Consequently, the trial court properly denied Johnson's request to suppress his taped confession.

### CONCLUSION

Based on the foregoing, we find that the trial court did not err in finding that Johnson was lawfully in custody when the police questioned him concerning the robbery or in admitting his taped confession. Therefore, while the first statement was inadmissible because the police failed to obtain a valid waiver, any error in its admission was harmless given Johnson's detailed taped confession.

Affirmed.

SULLIVAN, J., and NAJAM, J., concur.