

FILED

Jan 25 2019, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Elizabeth J. Strickland, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | January 25, 2019 <br><br> Court of Appeals Case No. 18A-CR-1030 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Bradley B. Jacobs, Judge <br><br> Trial Court Cause No. 10C02-1703-F2-10 |

**May, Judge.**

[1] Elizabeth K. Strickland appeals her convictions of Level 2 felony dealing in methamphetamine,[1] Level 6 felony possession of a controlled substance,[2] Level 6 felony unlawful possession of a syringe,[3] and Level 6 felony maintaining a common nuisance.[4] She presents several issues that we restate as:

1. Whether the trial court erred in admitting Strickland's incriminating statements;

2. Whether the trial court erred in admitting evidence procured via search warrant; and

3. Whether Strickland's seventeen and one-half year sentence is inappropriate.

We affirm.

# Facts and Procedural History

[2] On March 27, 2017, Rodney Roudenbush and Kimberly Pierce rented a room at the Jeffersonvilla motel. Strickland came to visit. Roudenbush, Pierce, and Tina Hoffmeister then left the motel in a car driven by Roudenbush, while Strickland stayed in the motel room.

---

[1] Ind. Code § 35-48-4-1.1 (2016).

[2] Ind. Code § 35-48-4-7 (2014).

[3] Ind. Code § 16-42-19-18 (2015).

[4] Ind. Code § 35-45-1-5 (2016).

[3]     Jeffersonville Police Department Officer Tom O'Neil was "on routine patrol doing . . . hotel and motel interdiction."[5] (Tr. Vol. 1 at 108.) When he saw Roudenbush leave the motel, he followed the car. When Roudenbush "made an abrupt southbound turn . . . almost causing a traffic accident[,]" (*id.* at 110), Officer O'Neil initiated a traffic stop. When approaching the stopped vehicle, Officer O'Neil observed the driver, Roudenbush, "making furtive movements [and] reaching downward to-toward underneath the seat or uh the right-side of the seat." (*Id.*) To Officer O'Neil, it appeared as though Roudenbush was trying to hide something. Officer O'Neil asked Roudenbush what he had hidden, to which Roudenbush responded "dope." (*Id.* at 111.) Roudenbush clarified that "dope" meant methamphetamine. (*Id.*) Officers searched Roudenbush and found two bags of drugs on Roudenbush's person. Officers found additional bags of drugs in the car.

[4]     Roudenbush asked to speak to Sergeant Dan Lawhorn "regarding assisting [Sergeant Lawhorn] in uh further law enforcement investigations [in an] attempt to uh help his legal matters[.]" (Tr. Vol. 2 at 24.) Roudenbush told Sergeant Lawhorn "he had just left the Jeffersonvilla, room 28, um where [Strickland] remained and [Roudenbush] stated that there was additional narcotics in in [sic] the room." (*Id.*) Sergeant Lawhorn deemed Roudenbush's information to be credible because he knew Roudenbush and Strickland to be

---

[5] Officer O'Neil testified that "hotel and motel interdiction" is "basically . . . targeting the local motels and hotels that's [sic] known for narcotics uses or distribution[.]" (Tr. Vol. 1 at 108.)

"very close associates." (*Id.*)  Sergeant Lawhorn directed some of the other officers to maintain surveillance on the motel while he returned to the station to draft a search warrant application.  Officer Shaune Davis was surveilling the motel room and observed people visiting the motel room but staying only briefly.[6]  Officer Davis reported this information to Detective Lawhorn for inclusion in his search warrant affidavit.

[5]     The affidavit that Sergeant Lawhorn submitted to procure a search warrant stated:

> In support of said affidavit for probable cause this affiant states as follows: Your affiant within the last 4 hours assisted Officer Tom O'Neil, who is currently assigned to the Jeffersonville Police Department drug Investigation for interdiction purposes, on a traffic stop leading to the arrest of three individuals identified as Rodney Roudenbush, Tina L. Hoffmeister, and Kimberly S. Pierce, and the seizure of approximately 10 grams methamphetamine individually packaged for sale.  Officer O'Neil was observing for short stays at the above described location. The above described location is a known location for the sale of illegal narcotics.  Upon observing for suspicious activity at the above described location Officer O'Neil observed a tan colored Ford Taurus departing the area from directly in front of room #28.  During the course of Officer O'Neil's traffic stop several items consistent with the manufacturing and distribution of methamphetamine were located inside a small locked Sentry

---

[6] Officer Davis explained brief stays, in this context, are "consistent with sometimes [sic] with dealing in narcotics."  (Tr. Vol. 1 at 74.)

safe. These items included scales, sandwich baggies and small zip lock bags.

After arriving to assist Officer O'Neil your affiant immediately identified the driver as Rodney Roudenbush, [white male], from previous law enforcement investigations. Officer O'Neil advised all subjects of their Miranda Warning and stated that they understood their legal rights. Mr. Roudenbush immediately advised Officer O'Neil that he wished to cooperate with law enforcement stating he could purchase methamphetamine from other individuals. Your affiant asked where he was coming from and he stated room #28 at the Jeffersonvilla Motel. Mr. Roudenbush stated that a white female identified as Elizabeth "Juanita" Strickland remained at the motel when he departed. Your affiant is familiar with Elizabeth "Juanita" Strickland from past law enforcement investigations. Your affiant and other law enforcement officials have conducted numerous controlled buys of methamphetamine from her in the last 4 months. Mr. Roudenbush further stated that he believed Elizabeth "Juanita" Strickland to be in possession of additional methamphetamine back at the above described location.

Upon speaking with Pierce, she stated that she was the sister of Elizabeth "Juanita" Strickland and that they had just left the above described location. Pierce stated that the room that they are occupying is registered to her. Hoffmeister stated that she and the others had just left the above described location and where [sic] she left a small bag of methamphetamine inside the room.

While conducting the traffic stop Det [sic] Davis returned to the above described location and began surveillance. During this short time two vehicles arrived where occupants exited the vehicle and entered the above described location where they stayed for a brief period of time and then exited and departed the area. Det [sic] Davis did observe Elizabeth "Juanita" Strickland

open the door to the above described location and let these individuals into the room.

Your affiant has a working relationship with local motel/hotels due to the unfortunate nature that these structures are common places for drug dealers to distribute illegal narcotics. Management at the above aforementioned location has contacted your affiant on numerous occasions in the past leading to arrests of individuals involved in drug related offenses.

(App. Vol. 2 at 109-110.) A search warrant was issued for room #28 at the Jeffersonvilla motel.

[6] Upon receipt of the search warrant, Jeffersonville police officers approached the motel room where Strickland was. A young man and woman were in the room with Strickland. They were later identified as Strickland's son and the son's friend. Both were allowed to leave once it was confirmed they were not involved with the distribution or possession of drugs. However, while that investigation was being completed, all three occupants of the room were handcuffed and read their Miranda[7] advisement.

[7] The State charged Strickland with Level 2 felony dealing in methamphetamine, Level 6 felony possession of a controlled substance, Level 6 felony unlawful possession of syringe, and Level 6 felony maintaining a common nuisance. The

---

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966) (when taking citizens into custody, officers must advise them of their right to remain silent, their right to counsel during questioning, their right to appointment of counsel if one cannot be afforded, and their right to assert those rights at any time).

State later amended the charging information to include Level 3 felony possession of methamphetamine.[8] Strickland filed two motions to suppress. In the first she alleged the search warrant used to obtain evidence in the hotel room was unsupported by probable cause. The second sought to suppress Strickland's statements in the hotel room based on Strickland's assertions that she was not properly mirandized.[9] The court held an evidentiary hearing and then denied the motions.

[8] A conversation between defense counsel and the trial court regarding whether continuing objections were valid resulted in defense counsel stating he would object at the relevant times but did not "need to lay out each point of the argument each time it should come up[.]" (Tr. Vol. 1 at 88-9.) The trial court and the State agreed, and the trial court stated: "So, we'll we will [sic] note the continued [sic] objection and when you object object [sic] we will incorporate these arguments, this part of the hearing into the Court's Record for future." (*Id*. at 89.) During the trial, at different intervals, defense counsel noted his continuing objection. (*See, e.g.*, *id*. at 119 (continuing objection to the search warrant), *id*. at 129 (continuing objection to admission of Strickland's statements), *id*. (continuing objection to admission of Strickland's statements),

---

[8] Ind. Code § 35-48-4-6.1.

[9] The Appendix indicates it contains two motions to suppress, but the indicated pages appear to contain the same motion. We therefore rely on the transcript to determine the content of Strickland's motions to suppress. *Contra* Ind. Appellate Rule 50(A)(2)(f) (the appendix will contain "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal").

*id.* at 166 (continuing objection to admission of Strickland's statements), *id.* at 168 (continuing objection to admission of Strickland's statements).)

[9] The jury returned a guilty verdict on all charges. The trial court merged the possession of methamphetamine charge with the dealing in methamphetamine charge. The trial court identified Strickland's criminal history as an aggravator and Strickland's early trauma and the hardship to her family as mitigators. The trial court also "identif[ied] a creative mitigator that Ms. Strickland's always been pleasant when in Court[.]" (Tr. Vol. 2 at 140.) However, it still found the aggravators outweighed the mitigators and sentenced Strickland to an aggregate sentence of seventeen and one-half years fully executed, with Purposeful Incarceration as a term of the sentence.

# Discussion and Decision

## Admission of Evidence

[10] Strickland did not seek interlocutory review of the denial of her motion to suppress but instead appeals following trial. This issue is therefore "appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Lundquist v. State,* 834 N.E.2d 1061, 1067 (Ind. Ct. App. 2005)*.* We do not reweigh the evidence, and we consider

conflicting evidence most favorable to the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

# Statements to the Police

## *Consideration of Suppression Hearing Evidence*

[11] To the extent Strickland argues the State improperly relied on evidence from the suppression hearing to support its arguments, we note the parties and the trial court had an extended conversation on how to record a continuing objection to the issues presented at the suppression hearing. They all agreed that Strickland's counsel would voice his objection at all relevant times but would not need to re-argue the objections each time. (*See* Tr. Vol. 1 at 88-89.) Additionally, the trial court then stated it would note the continuing objection and that it incorporated "these arguments, this part of the hearing into the Court's Record for future." (*Id*. at 89.)

[12] Once a continuing objection is approved, "trial judges . . . need not necessarily rehear evidence and arguments relating to admissibility issues previously heard and determined during pre-trial proceedings." *Joyner v. State*, 678 N.E.2d 386, 393 (Ind. 1997), *reh'g denied*. Our Indiana Supreme Court gave guidance for the proper way to handle a trial objection on an issue decided in a pre-trial hearing:

> As a backdrop to proper consideration of this matter, it should be kept in mind that, in these situations, the State has already successfully met the issues raised in the challenge and shown beyond a reasonable doubt the voluntariness of the waiver and statement. When a simple objection for the purpose of preserving appellate rights is made, the trial judge should

consider the pre-trial determination res judicata and binding upon him and overrule the objection. If, however, the trial objection is based upon new factual or legal matter, a simple overruling of the objection would not be appropriate. In that instance, the trial judge may expect, and indeed require, that he be provided with an accurate summary description of such new matter. Thereafter, either of two levels of judicial response is appropriate. The trial judge may summarily overrule the objection if the new matter could in no event result in a determination of inadmissibility. This summary disposition may be made upon consideration of counsel's description, or, in the discretion of the judge, after having permitted the defense to call witnesses, to present its new matter. On the other hand, if the trial judge deems such new matter to be of sufficient substance, he may conduct a hearing on the motion to suppress, having a scope appropriate under the circumstances, and reconsider the issue of admissibility.

*Magley v. State*, 263 Ind. 618, 634-35, 335 N.E.2d 811, 821 (1975), *overruled on other grounds by Smith v. State*, 689 N.E.2d 1238 (Ind. 1997) (overruling previous cases regarding the burden of proof required to show voluntariness of a confession under the United States Constitution). Thus, when a trial court is presented with an objection to evidence that was offered at a suppression hearing and already ruled upon,

the trial court may reflect upon the foundational evidence from the motion to suppress hearing when that evidence is not in direct conflict with the evidence introduced at trial. By this we mean that trial courts may not wholly dismiss direct evidence at trial and accept evidence from the motion to suppress hearing in its place.

*Kelley v. State*, 825 N.E.2d 420, 426 (Ind. Ct. App. 2005).

[13] Here, at the suppression hearing, officers stated all three occupants of the motel room were read a mass advisement of their Miranda rights. Officer O'Neil stated he "advised everybody in the r- [sic] their Miranda warning." (Tr. Vol. 1 at 55.) He stated he advised "all three together and then [we] have each one acknowledge." (*Id*. at 57.) Officer Davis confirmed Miranda warnings were given but without any details. Sergeant Lawhorn stated, "Officer O'Neil clearly advised all subjects of their Miranda warning by reading it off his [ ] card that was issued to him. Uh all subjects stated that they understood their rights in-individually." (*Id*. at 83.)

[14] At trial, no contradictory evidence regarding Strickland's understanding of her Miranda rights was presented. Officer O'Neil was asked how a mass advisement of Miranda rights is given and whether he "ask[s] each one if they understand." (*Id*. at 152.) He replied that he did. Officer Davis testified, "Officer O'Neil advised them of Miranda warning, uh it was a blanket advisement. So, he read Miranda warning to them and then after that we go one at a time, do you understand your rights, do you understand your rights, do you understand your rights, to each of them." (*Id*. at 234.) Sergeant Lawhorn stated Strickland had "been Mirandized and acknowledged that Miranda [ ] warning[.]" (Tr. Vol. 2 at 40.)

[15] Contrary to Strickland's argument that "the foundational evidence at trial did not establish that Strickland understood her rights prior to confessing[,]" (Reply Br. at 4), the evidence presented at trial was not in conflict with the evidence presented at the suppression hearing. At the suppression hearing, both Officer

O'Neil and Sergeant Lawhorn agreed each room occupant acknowledged the rights read to them, and Sergeant Lawhorn stated all three occupants "stated that they understood their rights in-individually." (Tr. Vol. 1 at 83.) At trial, Officer O'Neil confirmed he had asked each room occupant whether s/he understood his or her rights. This is in agreement with his suppression hearing testimony. Officer Davis testified that after reading the Miranda warnings, "we go one at a time, do you understand your rights, do you understand your rights, do you understand your rights, to each of them." (*Id*. at 234.) This agrees with testimony given at the suppression hearing and by repeating "do you understand your rights" three times, Officer Davis implied the question was asked of each of the three room occupants. Sergeant Lawhorn merely reiterated generally that Strickland had "been Mirandized and acknowledged that Miranda [ ] warning[.]" (Tr. Vol. 2 at 40.) While this is not as specific as his suppression hearing testimony, it does not conflict with it.

[16]     Given that the evidence presented at trial was not in direct conflict with the evidence presented at the suppression hearing, we cannot say the trial court abused its discretion by not stopping the trial and conducting a full evidentiary hearing to address this issue again. *See Kelley*, 825 N.E.2d at 426 (if no evidence presented at trial is in direct conflict with evidence presented at a suppression hearing, the trial court may use the suppression hearing evidence to support its ruling).

[17]  When a defendant challenges the admission of a confession, the State must prove beyond a reasonable doubt the confession was given voluntarily. *Jackson v. State,* 735 N.E.2d 1146, 1153 (Ind. 2000). On review, we look to the totality of the circumstances surrounding the waiver of rights and confession. *Id.* We focus on whether the waiver or confession was free, voluntary, and not induced by violence, threats, promises, or other improper influences. *Id.* This same test is used when determining whether Miranda rights were voluntarily waived. *Carter v. State*, 730 N.E.2d 155, 157 (Ind. 2000). "An express written or oral waiver of rights is not necessary to establish a waiver of *Miranda* rights." *Id.* We will uphold the trial court's decision if there is substantial evidence of probative value to support it. *Id.* We do not reweigh the evidence, and we consider any conflicting evidence most favorable to the trial court's ruling. *Taylor v. State,* 689 N.E.2d 699, 702 (Ind. 1997).

[18]  Strickland argues that although Officer O'Neil read the Miranda rights to her, her son, and her son's friend, Strickland did not individually acknowledge and waive those rights.[10] She argues that while the State presented evidence she acknowledged the warning, it did not present evidence she understood the warning and "intended to waive those rights." (Br. of Appellant at 16.) Strickland relies on *Johnson v. State*, 829 N.E.2d 44 (Ind. Ct. App. 2005), *trans.*

---

[10] The parties do not dispute that Strickland was in custody when she talked to the police.

*denied*, and *State v. Keller*, 845 N.E.2d 154 (Ind. Ct. App. 2006), to support her argument.

[19] In *Johnson*, Johnson was advised of his Miranda rights but did not acknowledge the advisement before he made a statement. *Johnson*, 829 N.E.2d at 50. Although he was later provided a waiver form and signed it, Johnson made the first statement without waiving his rights, and a panel of this court held his statement to be inadmissible. *Id*.

[20] In *Keller*, officers presented Keller with a waiver form and advised him to read it and initial it. *Keller*, 845 N.E.2d at 159. Although Keller did these things and indicated he had read it, the video shows he barely glanced at the paper and initialed and signed in the correct areas only at the direction of the officers. *Id*. Because Keller did not indicate he had understood the form, though, a panel of this court affirmed the trial court's suppression of the statements Keller made after signing the form. *Id*. at 164. Importantly, the panel stated law enforcement agents must "clearly explain a person's constitutional rights and determine the accused's understanding prior to commencing an interrogation." *Id*.

[21] Both *Keller* and *Johnson* are distinguishable from the facts herein. Johnson never acknowledged the original advisement of his Miranda rights. *Johnson*, 829 N.E.2d at 50. Here, however, Officer O'Neil read a mass advisement of rights and all three occupants of the motel room "stated that they understood their rights in-individually." (Tr. Vol. 1 at 83.) Thus, officers received

acknowledgement from Strickland that she understood her rights, which distinguishes this case from *Johnson*. In *Keller*, Keller did not actually read, let alone understand, the waiver before he signed it, and the officers did not explain his rights to him orally. *Keller*, 845 N.E.2d at 164. Here, though, a written waiver was never at issue. Officer O'Neil read the advisement off a card and then asked each occupant of the room to acknowledge that he or she understood.

[22] Strickland has not argued, nor has any evidence been produced, to indicate officers coerced her statements. The State presented evidence Strickland acknowledged and understood the Miranda advisement given to her by Officer O'Neil. Therefore, the trial court did not abuse its discretion when it allowed her statements into evidence. *See Henry v. State*, 738 N.E.2d 663, 665 (Ind. 2000) (incriminating statements made after being advised of Miranda rights admissible under "the 'totality of the circumstances' test" even when defendant does not agree with all the evidence).

## Search Warrant

[23] Where admissibility of evidence is challenged based on the constitutionality of the search that uncovered the evidence, we also consider any uncontested evidence favorable to the appellant.[11] *Johnson v. State*, 992 N.E.2d 955, 957

---

[11] Strickland does not make an independent Indiana constitutional argument on the issue of whether the search warrant was supported by probable cause; therefore, we need only address her claims using federal

(Ind. Ct. App. 2013), *trans. denied*. "Although a trial court's determination of historical facts is entitled to deferential review, we employ a *de novo* standard when reviewing the trial court's ultimate determination of reasonable suspicion and probable cause." *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied*. In other words, when a trial court has admitted evidence alleged to have been discovered as the result of an illegal search or seizure, we generally will assume the trial court accepted the evidence presented by the State and will not reweigh that evidence, but we owe no deference as to whether that evidence established the constitutionality of a search or seizure. *Johnson*, 992 N.E.2d at 957.

[24] Strickland argues the "search warrant application was based entirely on hearsay not corroborated with any information not available to the general public." (Br. of Appellant at 19.) In support, she cites Indiana Code section 35-33-5-2(b), which states an affidavit based on hearsay must "contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or . . . contain information that establishes that the totality of the circumstances corroborates the hearsay." As she claims the search warrant was

---

standards. *See Haley v. State*, 696 N.E.2d 98, 100 n.1 (Ind. Ct. App. 1998) (without a separate argument, we analyze using federal standards), *trans. denied*.

based on uncorroborated hearsay, she also argues the good-faith exception does not apply.[12]

[25]    The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their person, houses, papers, and effects, against unreasonable search and seizure, shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to searched, and the person or thing to be seized.

For a valid warrant to issue, the police must set forth probable cause to an issuing magistrate. *Carter v. State*, 105 N.E.3d 1121, 1127 (Ind. Ct. App. 2018), *trans. denied*. Probable cause is a "fluid concept incapable of precise definition . . . [and] is to be decided based on the facts of each case." *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997). "[T]he central question in a probable cause determination is whether the affidavit presents facts, together with reasonable inferences, demonstrating a sufficient nexus between the suspected criminal activity and the specific place to be searched." *Carter*, 105 N.E.3d at 1128. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there

---

[12] Because the hearsay was corroborated by police observation, *see infra*, we need not reach Strickland's argument regarding good faith. *Cf. Jaggers v. State*, 687 N.E.2d 180, 184 (Ind. 1997) (analyzing whether officers acted in good faith when relying on an invalid warrant).

is a fair probability that contraband or evidence of the crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983), *reh'g denied*.

[26] "[U]ncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." *Newby v. State,* 701 N.E.2d 593, 598 (Ind. Ct. App. 1998).

> The reliability of hearsay can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted.

*Id*.

[27] Contrary to Strickland's argument, the search warrant affidavit contains corroboration of Roudebush's statements. The affidavit notes, "Hoffmeister stated that she and the others [Roudebush and Pierce] had just left the [Jeffersonvilla motel, Room 28] and where [sic] she left a small bag of methamphetamine inside the room." (App. Vol. 2 at 110.) Additionally, Officer Davis returned to the motel parking lot after the traffic stop and arrest of the occupants of the car, and continued surveilling the location. The search warrant affidavit states:

> During this short time two vehicles arrived where occupants exited the vehicle and entered the above described location where they stayed for a brief period of time and then exited and departed the area. [Officer Davis] did observe Elizabeth

> "Juanita" Strickland open the door to the above described
> location and let these individuals into the room.

(*Id.*)

[28] Given all the information in the search warrant affidavit, the totality of the circumstances reasonably leads to the conclusion police would find drugs in room #28 of the Jeffersonvilla motel. *See Gates*, 462 U.S. at 238 ("given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of the crime will be found in a particular place"). Therefore, we cannot say the search warrant was not supported by sufficient probable cause. Thus, the trial court did not abuse its discretion when it admitted the evidence procured via the search warrant. *See Perez v. State*, 27 N.E.3d 1144, 1154 (Ind. Ct. App. 2015) (when sufficient evidence of probable cause is present, no abuse of discretion in admitting evidence), *trans. denied*.

# Inappropriate Sentence

[29] Under Ind. Appellate Rule 7(B), we may revise a sentence if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (2007). We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). We defer to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not

whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012), *reh'g denied*. Strickland, as the appellant, bears the burden of demonstrating her sentence is inappropriate. *See Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[30] When considering the nature of the offense, the advisory sentence is the starting point for determining the appropriateness of a sentence. *Anglemyer*, 868 N.E.2d at 494. Strickland was convicted of a Level 2 felony and three Level 6 felonies. The sentencing range for a Level 2 felony is "a fixed term of between ten (10) and thirty (30) years, with the advisory sentence being seventeen and one-half (17 ½ ) years." Ind. Code § 35-50-2-4.5 (2014). The sentencing range for a Level 6 felony is "a fixed term of between six (6) months and two and one-half (2 ½ ) years, with the advisory sentence being one (1) year." Ind. Code § 35-50-2-7 (2016). The trial court sentenced Strickland to an aggregate of seventeen and one-half years for her four convictions; thus, Strickland's aggregate sentence was the advisory sentence for the highest level felony for which she was found guilty.[13]

[31] Strickland argues her offense was committed "in the most restrained manner possible." (Br. of Appellant at 28) (formatting revised). Strickland asserts that she was only "selling enough to support her habit[,]" (*id*.), and "was not getting rich dealing drugs[.]" (*Id*.) Strickland asks this court to show "exceptional

---

[13] Strickland was sentenced to one year each on the other charges to be served concurrent with the seventeen and one-half year sentence for the Level 2 felony.

leniency[,]" (*id*.), because "it is difficult to imagine a way in which the crime of dealing in 10 grams or more of methamphetamine could have been committed in a more restrained manner." (*Id*.) While we see nothing more egregious about Strickland's offense than the standard Level 2 felony dealing offense, neither do we see anything to persuade us that "exceptional leniency" should be given. *See* Ind. Code § 35-38-1-7.1(b)(6) (a trial court may consider, as a mitigating circumstance, whether a person has "led a law-abiding life for a substantial period before commission of the crime"); *see also Biehl v. State*, 738 N.E.2d 337, 339 (Ind. Ct. App. 2000) (leniency is encouraged if a defendant has never been through the criminal justice system, particularly if the defendant has "lived a law-abiding life for decades"), *trans. denied*.

[32]  When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson*, 986 N.E.2d at 857. The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.* Strickland acknowledged she has "convictions for possession of illegal substances dating back to 2003." (Br. of Appellant at 25.) She argues, however, she is a victim of circumstance. She alleges her step-father physically and sexually abused her, she suffers from various mental and physical health issues, and her doctors enabled her drug abuse. She claims her "criminal history is best understood as a product of [her] difficult upbringing, vulnerability, and unfortunate circumstances beyond her control rather than an entrenched propensity toward lawlessness." (*Id.* at 26.) Nevertheless, she argues, she has raised a family, with whom she is close, and

she has extended family who are supportive. Her sisters described her as generous, caring, and someone who donates time and money to various charities. After the official pre-sentence investigation was performed, the probation department completed an additional memorandum in which it quoted a letter written by Strickland. In the letter, Strickland stated while she was mad at everyone when she was first incarcerated, she was later "happy because this jail saved me." (Ex. Vol. 2 at 32.)[14]

[33]    Strickland's criminal history consists of "three (3) prior Misdemeanor convictions and one (1) prior Felony conviction." (Conf. App. Vol. 2 at 81.) These convictions consist of misdemeanor possession within 1000 feet of a public park, felony possession of cocaine, misdemeanor driving while suspended, and misdemeanor possession of a controlled substance. Strickland has two pending cases involving drugs, and one felony possession of a controlled substance was dismissed on completion of Drug Court. These cases occurred over a span of fifteen years. Continuing to commit crimes after frequent contacts with the judicial system is a poor reflection on one's character. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007); *see also Connor v. State,* 58 N.E.3d 215, 221 (Ind. Ct. App. 2016) (continued crimes indicate a failure to take full responsibility for one's actions). As such, we

---

[14] Two exhibit volumes exist but they are numbered sequentially rather than independently. *Contra* Ind. Appellate Rule 29(A) (exhibit volumes shall conform to the requirements of, amongst other rules, Appendix A(2)(a), which provides: "Each volume of the Transcript shall be independently and consecutively numbered at the bottom."). For ease of reference, we cite to the page numbers as they appear consecutively in the individual PDF of the Electronic Record.

cannot agree with Strickland that, based on her character, her seventeen-and-one-half-year sentence is inappropriate for her four felony convictions.

# Conclusion

[34] The trial court did not abuse its discretion when it admitted Strickland's statements to the police or when it admitted the evidence procured pursuant to the search warrant. Strickland has not demonstrated her sentence is inappropriate in light of the nature of her offense and her character. Accordingly, we affirm.

[35] Affirmed.

Baker, J., and Robb, J., concur.