## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



**FILED**

May 22 2020, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jay A. Rigdon
Rockhill Pinnick LLP
Warsaw, Indiana

ATTORNEY FOR APPELLEE

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jose Luis Izaguirre,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 22, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2793<br><br>Appeal from the<br>Kosciusko Superior Court<br><br>The Honorable<br>David C. Cates, Judge<br><br>Trial Court Cause No.<br>43D01-1904-F1-258 |

**Kirsch, Judge.**

[1] Jose Luis Izaguirre ("Izaguirre") was charged with three counts of child molesting,[1] each as a Level 1 felony. He now brings this discretionary interlocutory appeal to challenge the denial of his motion to suppress, which asked the trial court to exclude from evidence Izaguirre's statements made during police questioning. Izaguirre raises two issues, which we restate as:

> I. Whether he sufficiently understood English to make a knowing waiver of his Miranda rights; and

> II. Whether the presence of his wife ("W.I.") during his interrogation made his confession involuntary.

[2] We affirm.

## Facts and Procedural History

[3] Izaguirre moved to the United States from Mexico when he was thirteen years old and attended school in the United States. *Tr. Vol. 2* at 7, 25. Around the age of twenty-two, he began a relationship with W.I. *Id*. at 6. Izaguirre and W.I. lived together and were eventually married in Warsaw, Indiana. *Id*. at 6-7. W.I. had three children, and they lived with her and Izaguirre. *Id*. at 7. Izaguirre enrolled in an English class in Warsaw but withdrew from the class because he thought it was "stupid" because he "already knew everything they were teaching . . . ." *Id*. at 8. Izaguirre spoke both English and Spanish at

---

[1] *See* Ind. Code § 35-42-4-3(a).

home, but he spoke English more often. *Id.* He also spoke English to his Spanish-speaking friends who understood English. *Id.* at 8-9. Izaguirre would watch television shows and movies that were broadcast in English. *Id.* at 9.

[4] On March 29, 2019, one of W.I.'s children ("Child"), who was less than fourteen years old, claimed Izaguirre had sexually assaulted her. *Id.* W.I. and Child were interviewed by Child Protective Services that day. *Id.* at 14. Warsaw Police Department Detective Paul Heaton ("Detective Heaton") investigated Child's allegations. He went to Izaguirre's residence to speak with Izaguirre, and they conversed in English. *Id.* at 15. Detective Heaton then took Izaguirre to the Warsaw Police Department for an interview. *Id.* at 17. At no point during these conversations did Detective Heaton and Izaguirre speak in any language other than English. *Id.* at 18. The entrance to the police department displayed a sign advising that statements would be video recorded. *Id.*

[5] During the interview, Izaguirre was not restrained, and Detective Heaton provided him with a glass of water. *Id.* Detective Heaton told Izaguirre he could stop answering questions at any time. *Id.* at 21. Detective Heaton asked if Izaguirre had ever been represented by an attorney, and Izaguirre responded affirmatively and also indicated he had prior contact with the criminal justice system. *Id.* at 20-21.

[6] Before questioning Izaguirre, Detective Heaton advised Izaguirre of his Miranda rights. *Id.* at 18-19; *State's Ex. 3* at 15:33:43-15:36:25. Detective

Heaton told Izaguirre to ask any questions he had, and Detective Heaton would answer them. *Tr. Vol. 2* at 21. Izaguirre asked several questions as Detective Heaton read Izaguirre's Miranda rights and when he did, Detective Heaton answered questions about each Miranda right "one by one." *Id*. at 19. After Detective Heaton explained each Miranda right, Izaguirre said he understood that right. *Id*. At no point did Izaguirre ask Detective Heaton to read the Miranda rights in Spanish or request an interpreter. *Id*. at 22.

[7] During the first thirty minutes of the interview, Izaguirre asked Detective Heaton several times about where W.I. was. *Id*. at 21-22; *State's Ex. 3* at 15:46:53, 15:50:36. Detective Heaton asked Izaguirre if he wanted to talk to W.I., and Izaguirre said that he did. *Tr. Vol. 2* at 21-22; *State's Ex. 3* at 15:47:08. Detective Heaton explained to Izaguirre that W.I. was not available at the time because she was at the Fort Wayne Sexual Assault Center so Child could be tested to determine if she was pregnant. *Tr. Vol. 2* at 22; *State's Ex. 3* at 15:50:45. W.I. returned to Warsaw from Fort Wayne about three hours after Izaguirre asked to talk to her. *Tr. Vol. 2* at 22.

[8] After explaining Izaguirre's rights, Detective Heaton asked if Izaguirre was willing to talk with him. *State's Ex. 3* at 15:36:24. Izaguirre replied, "It depends," which Detective Heaton understood to mean that it depended on what questions Detective Heaton was going to ask. *Tr. Vol. 2* at 20; *State's Ex. 3* at 15:36:27. Detective Heaton explained the purpose of the interview and told Izaguirre that he believed Izaguirre had engaged in sexual activity with Child. Izaguirre repeatedly denied the allegations. *State's Ex. 3* at 15:36:38-15:51:10.

[9] Before bringing W.I. into the interview room, Detective Heaton asked her some clarifying questions based on what Izaguirre had told Detective Heaton up to that point. *Tr. Vol. 2* at 22. However, Detective Heaton did not ask W.I. about the best plan or strategy to question Izaguirre. *Id.* Detective Heaton told W.I. that the conversation between her and Izaguirre would be recorded. *Id.* at 12. Detective Heaton walked W.I. into the interview room, and she sat down. *State's Ex. 3* at 19:04:51. Detective Heaton told W.I and Izaguirre, "Not to touch . . . no fighting, no nothing; you guys can have your own time here for a second." *Id*. at 19:04:47-19:05:01. After Detective Heaton left the room, W.I. asked Izaguirre, "Why" and "tell me why you did it," and then they began talking in Spanish. *Id*. at 19:04:51; 19:05:36-19:06:09; 19:06:24-19:06:44. W.I. also said, "She was your baby." *State's Ex. 3* at 19:06:24-19:06:44. W.I. was emotional yet composed during the discussion, crying softly on occasion, and usually maintaining a conversational tone. She never screamed or yelled and raised her voice only two or three times.

[10] After about twenty minutes, W.I. left the interview room. *Id*. at 19:24:30. Less than a minute later, Detective Heaton and W.I. re-entered the interview room, and Detective Heaton questioned Izaguirre for around eighteen minutes. *Id.* at 19:25:19-19:43:16. During this time, W.I. remained calm, usually acting as a translator between Detective Heaton and Izaguirre, although Izaguirre and Detective Heaton sometimes communicated directly in English. Izaguirre eventually admitted he had often engaged in sexual behavior with Child, beginning six years earlier, when Child was eight years old, and the family lived

in Muncie. *State*'s *Ex. 3* at 19:31:25, 19:34:20. At first, Izaguirre would rub Child's genitals with his hand, and as Child grew older, Izaguirre would insert his penis into Child's anus. *State's Ex. 3* at 19:31:30-19:31:45; *Id*. at 19:28:35-19:28:35.

[11] On April 1, 2019, the State charged Izaguirre with three counts of Level 1 felony child molesting. *Appellant's App. Vol. II* at 9-10. On September 9, 2019, Izaguirre filed a motion to suppress his confession, and on October 23, 2019, the trial court denied the motion to suppress. *Id*. at 33, 39. On November 14, 2019, Izaguirre filed a motion that asked the trial court to certify its order for an interlocutory appeal, and on November 15, 2019, the trial court granted the request. *Id*. at 6. On December 20, 2019, we granted Izaguirre's motion to accept jurisdiction over his interlocutory appeal. *Id*. at 53. On January 3, 2020, Izaguirre filed his notice of appeal. *Notice of Appeal, Odyssey*. We will provide additional facts as necessary.

## Discussion and Decision

[12] We review a trial court's denial of a motion to suppress the same way we review other sufficiency issues. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013). There must be substantial evidence of probative value to support the ruling of the trial court. *Id*. We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id*. We also consider undisputed evidence favorable to the defendant. *Harris v. State*, 60 N.E.3d 1070, 1072 (Ind. Ct. App. 2016), *trans. denied*. We review the trial

court's legal conclusions de novo. *State v. Brown*, 70 N.E.3d 331, 335 (Ind. 2017).

## I. Knowing Waiver of Miranda Rights

Izaguirre argues that he did not knowingly waive his Miranda rights because he did not understand Detective Heaton's English rendition of Izaguirre's Miranda rights. A waiver of Miranda rights is not knowing, voluntary, or intelligent if the warnings are not provided in a language a defendant understands. *Morales v. State*, 749 N.E.2d 1260, 1266-67 (Ind. Ct. App. 2001). "Due to the various ways a person may be warned under Miranda, a claim that advisements were inadequate requires that the State prove the warnings were given with sufficient clarity." *State v. Keller*, 845 N.E.2d 154, 162 (Ind. Ct. App. 2006).

We reject Izaguirre's claim that he did not knowingly waive his Miranda rights. Even though Spanish is Izaguirre's first language, he is capable of communicating in English and has done so for years, both at home and with friends. Izaguirre dropped out of a local English class because he already "knew everything they were teaching." *Tr. Vol. 2* at 8. Izaguirre spoke English at home more often than Spanish, he spoke English to his Spanish-speaking friends who understood English, and he would watch English language television shows and movies. *Id*. at 8-9. When Izaguirre told Detective Heaton that he did not understand his Miranda rights, Detective Heaton reviewed each right again, one at a time, providing detailed explanations of each right. *Id.* at 18-19; *State's Ex. 3* at 15:33:43-15:36:25. After each explanation, Izaguirre told

Detective Heaton that he understood that particular right. *Tr. Vol. 2 at 19; State's Ex. 3* at 15:33:43 to 15:36:25. At no point did Izaguirre ask Detective Heaton to read the Miranda rights in Spanish or request an interpreter. *Tr. Vol. 2 at 22.* The trial court did not abuse its discretion by rejecting Izaguirre's argument that his confession should be suppressed because he did not knowingly waive his Miranda rights.

## II. Voluntariness

Izaguirre contends his confession was involuntary because the State used W.I. to pressure Izaguirre into confessing that he had molested Child. Izaguirre does not cite specific behaviors or statements by W.I. as being coercive, but he instead argues that the State created an inherently coercive atmosphere by allowing W.I., the mother of Child, to come into the interview room while Detective Heaton questioned Izaguirre.

When a defendant challenges the admission of a confession, the State must prove beyond a reasonable doubt that the confession was given voluntarily. *Strickland v. State*, 119 N.E.3d 140, 148 (Ind. Ct. App. 2019), *trans. denied*. We review the totality of the circumstances surrounding the confession, focusing on whether the confession was free, voluntary, and not induced by violence, threats, promises, or other improper influences. *Id.* We will affirm the trial court's decision if there is substantial evidence of probative value to support it. *Id.* We do not reweigh the evidence, and we consider any conflicting evidence most favorable to the trial court's ruling. *Id.*

[17] W.I.'s presence in the interview room did not render Izaguirre's confession involuntary. First, there is no evidence the State hatched a plan with W.I. to use W.I. to intimidate Izaguirre into confessing. Indeed, it was Izaguirre's idea to bring W.I. into the interview room. *State*'s *Ex. 3* at 15:46:53, 15:47:08. It is true that when W.I. entered the interview the first time, she asked Izaguirre two uncomfortable questions: "Why?" and "tell me why you did it." *Id.* at 19:04:15-19:06:44. However, W.I. remained surprisingly calm and composed, never screaming or yelling at Izaguirre. W.I.'s behavior and demeanor were the same after she re-entered the interview room, this time accompanied by Detective Heaton. When Detective Heaton and Izaguirre were not speaking English to each other, W.I. acted as a translator. Moreover, none of Izaguirre's behavior during the interview indicated that he was emotionally distressed to a degree that made his confession involuntary. Izaguirre did not pace, fidget, shout, withdraw, or act out in any manner. The tone and timbre of his voice remained consistent. The totality of these circumstances established that W.I.'s presence in the interview room did not create an inherently coercive atmosphere. Thus, the totality of the circumstances show that Izaguirre's confession was free, voluntary, and not induced by violence, threats, promises, or other improper influences. *See Strickland*, 119 N.E.3d at 148. Accordingly,

the trial court did not abuse its discretion in denying Izaguirre's motion to suppress.[2]

[18]  Affirmed.

Najam, J., and Brown, J., concur.

---

[2] Additionally, Izaguirre argues that the recording of his statement violated his rights under the marital privilege statute because he was not advised that his conversation with Detective Heaton would be recorded. *See* Ind. Code § 34-46-3-1.  We reject this argument because the marital privilege is not grounds to exclude evidence in child molesting cases.  *See* Ind. Code § 31-32-11-1; *Baggett v. State*, 514 N.E.2d 1244, 1245 (Ind. 1987).  Also, the marital privilege would not bar W.I. from testifying about Izaguirre's confession because the privilege may be waived by either spouse.  *Glover v. State*, 836 N.E.2d 414, 422 (Ind. 2005).